**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 6 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

OKLAHOMA TURNPIKE
AUTHORITY, A Body Corporate and
Politic,

     Plaintiff,

v.

DIANA J. BRUNER, Personally and
as the Personal Representative
of the Estate of Elliott Daniel Bruner;

     Defendant-Appellant,

LEDA V. BRUNER, formerly known
as Leda V. Burgess; ELLIOTT
BIM BRUNER; STEVE BRUNER,
also known as Bim Stephen Bruner;
BUREAU OF INDIAN AFFAIRS,
Department of Interior, United States
of America,

     Defendants-Appellees,

and

18.31 ACRES OF LAND, More or
Less, Situated in the County of
Tulsa, State of Oklahoma; SON
BILLY, INC., An Oklahoma
Corporation; TULSA COUNTY
BOARD OF COMMISSIONERS;
TULSA COUNTY TREASURER;
JOHN DOE, sued as: Unknown

No. 00-5205

Owners,

Defendants.

**Appeal from the United States District Court
for the Northern District of Oklahoma
(D.C. No. 99-CV-0288-H)**

Submitted on the briefs:

Steven M. Harris and Michael D. Davis, Doyle & Harris, Tulsa, Oklahoma, for Appellant.

Geoffrey M. Standing Bear, Pawhuska, Oklahoma, for Appellees Leda V. Bruner, Elliot Bim Bruner, and Steve Bruner.

Thomas Scott Woodward, United States Attorney, Cathryn McClanahan, Assistant United States Attorney, Tulsa, Oklahoma, for Appellee Bureau of Indian Affairs.

Before **TACHA**, Chief Circuit Judge, **McKAY**, Circuit Judge, and **CUDAHY**, Circuit Judge.[*]

**CUDAHY**, Circuit Judge.

Diana Bruner, the widow of Daniel Bruner, brought cross-claims against

Daniel's parents in a condemnation action that had been instituted by the

_____

[*] The Honorable Richard D. Cudahy, United States Circuit Judge for the Seventh Circuit, sitting by designation.

Oklahoma Turnpike Authority. [1] Diana's cross-claims sought to establish her interest in four tracts of land (two of which were subject to the condemnation proceeding, and two of which were not) to which Daniel's parents held title. The district court entered judgment against Diana, and she appeals.

## I.

Daniel Bruner, who is now deceased, was the son of Leda and Bim Bruner, both of whom are Creek Indians. Diana Bruner is the widow of Daniel Bruner, and is his estate's personal representative.

On April 19, 1999, the Oklahoma Turnpike Authority filed a complaint against various parties, including Diana, Leda and Bim, seeking to use its power of eminent domain to acquire five tracts of land to which either Leda or Bim held title. The Authority also sought a determination of the just compensation for this taking. Shortly after the Authority filed its complaint, Diana filed two cross-claims against Leda and Bim, seeking a determination of her rights to two tracts of land which were subject to the condemnation proceeding—Tracts One and Two—and two tracts of land which were not—Tracts Six and Seven. (Tracts Three, Four and Five are not at issue in this case.)     Although Diana brought her

---

[1] Because the parties are members of the same family, they are identified by their first names throughout this opinion.

cross-claims both in her own name and on behalf of Daniel's estate, for convenience we will discuss Diana's arguments as if only Diana is asserting an ownership interest.

Diana's first cross-claim sought a determination that, although Leda held title to Tracts One, Two and Seven, Diana actually owned the tracts because of the allegedly fraudulent means by which Leda had acquired them. Tracts One, Two and Seven were originally owned by Leda's sisters. Daniel wished to purchase the tracts, but understood that they would lose their restricted (Indian) status if he bought them. [2] In order to retain the land's restricted status, Daniel used wholly-owned corporations to funnel money into Leda's account in the form of allegedly inflated pre-paid lease payments. Leda then bought Tracts One and Seven in her name, allegedly with the (unwritten) understanding that she would convey legal title to Daniel in the future. Diana claimed that Leda purchased Tract Two using a similar transactional structure.

Diana's second cross-claim sought a declaration that she owned Tract Six, although Bim held title to it. Tract Six was not restricted at the time of purchase, but became—and continues to be—restricted because Bim purchased it using

---

[2] Maintaining the restricted (Indian) status of land is generally preferable due to the tax benefits associated with restricted land. *See* Bittker & Lokken, *Federal Taxation of Income, Estates & Gifts* ¶ 1.2.9 ("Income derived by individual Indians from restricted allotted land, held in trust by the United States, is subject to numerous exemptions from taxation based on statute or treaty.").

money he received from an unrelated proceeding involving restricted property. Daniel and Bim then allegedly instituted a lease scheme that allowed Daniel to repay Bim for purchasing the land. Bim was to convey legal title in Tract Six to Daniel at Daniel's request, although this understanding was again not reduced to writing.

Because Tracts One, Two, Six and Seven were all allegedly purchased with Daniel's money, Diana believed that she really owned the tracts. Diana asserted four theories with respect to each of her ownership claims: (1) that she held title to the tracts under a resulting/constructive trust theory; (2) that she held title to the tracts under an equity theory; (3) that the placing of the land restrictions was void; and (4) that the agreements between Daniel and his parents, calling for them to convey their title in the land to Daniel, should be approved and enforced by the court.

On October 13, 1999, the district court orally ruled against Diana on both of her cross-claims, and on October 19, 1999, entered an order (the October 19 Order) that had been drafted by the government. Not surprisingly, this order essentially adopted the government's arguments without elaboration. With regard to Tracts One and Two, the court ruled that there could be no constructive trust because the land was, at all relevant times, restricted Indian land. The court further held that there could be no constructive trust claims "for the reasons cited

by the United States in its opening brief and reply brief." *Okla. Turnpike Auth. v. 18.31 Acres of Land*, No. 99-CV-288-H, slip op. at 1 (D. Okla. Dec. 14, 1999). While not detailing the reasons provided by the government, the court appears to have relied primarily on the government's assertion that restricted land cannot be encumbered without the approval of the Secretary of the Interior pursuant to the Supplemental Muscogee (Creek) Allotment Agreement, Act of June 30, 1902, 32 Stat. 500, § 16. With regard to Tracts Six and Seven, the district court ruled that, for the reasons provided by the government, it was without authority to render an opinion. The government's reasons, based on its representations to the district court, appear to be that (1) the district court lacked jurisdiction over Tracts Six and Seven because they were not part of the condemnation proceeding and (2) the court lacked jurisdiction to approve the agreement between Daniel and his parents to convey the tracts to Daniel on his demand because this jurisdiction lies exclusively in state court.

On November 5, 1999, Diana filed a motion that asked the district court to certify the October 19 Order for immediate appeal in accordance with Federal Rule of Civil Procedure 54(b), which states, in relevant part:

> When more than one claim for relief is presented in an action . . . the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

-6-

The district court denied this motion in an order dated December 14, 1999, stating that "Defendant has failed to make the threshold showing that the order it seeks to have converted to a final order pursuant to Rule 54(b) is either 'final' or a 'judgment' as required by applicable law." *Okla. Turnpike Auth. v. 18.31 Acres of Land*, No. 99-CV-288-H, slip op. at 1 (D. Okla. Dec. 14, 1999).

Diana next filed suit in state court, seeking a determination in her favor of the issues unresolved by the federal district court. The government removed this action to federal district court, and at an August 15, 2000 hearing, the district court apparently indicated that it was prepared to extend the reasoning it had applied to Tracts One and Two to Tracts Six and Seven. Following this hearing, the parties agreed to jointly seek certification of the October 19 Order and drafted an order to this effect, which the district court entered on September 19, 2000. Thus, in an unexplained, but probably proper, reversal of its previous position that it lacked jurisdiction over Tracts Six and Seven,[3] the district court announced:

> The parties now agree that the disposition of the issues presented
> and decided by the October 19, 1999 Order regarding Tracts 1

---

[3] The district court's certification order does state that the court entered an order on August 24, 2000, in which it determined that it possessed jurisdiction over Diana's claims to Tracts Six and Seven. However, the parties have not placed the August 24, 2000 order in the record on appeal, and we are thus unsure of the district court's reason for reversing its prior determination that it did not have jurisdiction over Tracts Six and Seven.

-7-

and 2 would apply with equal force to the removed quiet title action concerning Tracts 6 and 7. In the interest of judicial economy, this Court agrees that these issues should be presented to the Court of Appeals for decision pursuant to Federal Rule of Civil Procedure 54(b).

*Okla. Turnpike Auth. v. 18.31 Acres of Land*, No. 99-CV-288-H at 3 (D. Okla. Sept. 19, 2000). The district court concluded by stating:

> The parties are hereby granted leave to proceed to the U.S. Court of Appeals regarding this Court's dismissal of October 19, 1999 and the reasoning of this Court in so ruling. Should the appellate court sustain Claimant's objection, both the condemnation action [involving Tracts One and Two] and the removed state court action [involving Tracts Six and Seven] shall proceed to consider the Claimant's claims. Otherwise, the dismissal of October 19, 1999 shall be upheld and the reasoning therein shall apply with equal force to dismissal of the removed state action.

*Id.* Diana appeals.

## II.

On appeal, Diana argues that the district court erred by ruling that the tracts could not be encumbered without approval from the Secretary of the Interior. However, we do not reach the substance of Diana's argument, and instead dismiss the appeal without prejudice because the district court improperly certified the appeal under Federal Rule of Civil Procedure 54(b).

1.

Because both parties jointly sought certification under Rule 54(b), it is not surprising that neither party now disputes the propriety of the court's decision to certify its order. However, "[i]f the parties do not raise the question of lack of jurisdiction, it is the duty of the federal court to determine the matter *sua sponte*." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). Accordingly, we turn our attention to the question whether the district court properly certified the October 19 Order under Rule 54(b).

The purpose of Rule 54(b) "is to avoid the possible injustice of a delay in entering judgment on a distinctly separate claim or as to fewer than all of the parties until the final adjudication of the entire case by making an immediate appeal available." 10 Charles A. Wright et al., *Federal Practice and Procedure: Civil 2d* § 2654 at 33 (1982). However, Rule 54(b) "preserves the historic federal policy against piecemeal appeals," *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 438 (1956)—a policy that promotes judicial efficiency, expedites the ultimate termination of an action and relieves appellate courts of the need to repeatedly familiarize themselves with the facts of a case. Thus, "[t]he rule attempts to strike a balance between the undesirability of more than one appeal in a single action and the need for making review available in multiple-party or multiple-claim situations at a time that best serves the needs of the litigants." 10 Charles A. Wright et al., *Federal Practice and Procedure: Civil 2d* § 2654 at 35

(1982).

"Rule 54(b) entries are not to be made routinely . . . ." *Great American Trading Corp. v. I.C.P. Cocoa, Inc.*, 629 F.2d 1282, 1286 (7th Cir. 1980) (cited with approval in *Livesay v. Shollenbarger*, 19 F.3d 1443 (table), 1994 WL 56923, at \*\*2 (10th Cir. 1994)); *see also Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 10 (1980) ("sound judicial administration does not require that Rule 54(b) requests be granted routinely").  Indeed, "trial courts should be reluctant to enter Rule 54(b) orders since the purpose of this rule is a limited one: to provide a recourse for litigants when dismissal of less than all their claims will create undue hardships." *Gas-A-Car, Inc. v. Am. Petrofina, Inc.*, 484 F.2d 1102, 1105 (10th Cir. 1973).  Thus, a certification under Rule 54(b) is only appropriate when a district court adheres strictly to the rule's requirement that a court make two express determinations.  First, the district court must determine that the order it is certifying is a final order.  *See* Fed.R.Civ.P. 54(b); *Curtiss-Wright Corp.* 446 U.S. at 7.  Second, the district court must determine that there is no just reason to delay review of the final order until it has conclusively ruled on all claims presented by the parties to the case.  *See* Fed.R.Civ.P. 54(b); *Curtiss-Wright Corp.*, 446 U.S. at 8.

A two-tiered standard of review is applied to a district court's Rule 54(b) certification.  The district court's determination of the certified order's finality is

subject to *de novo* review because it is a question of law. *See Curtiss-Wright Corp.*, 446 U.S. at 10; *Livesay*, 19 F.3d 1443 (table), 1994 WL 56923, at **2; *Sussex Drug Prods. v. Kanasco, Ltd.*, 920 F.2d 1150, 1153 (3d Cir. 1990); 19 James Wm. Moore et al., *Moore's Federal Practice* ¶ 202.06[4] (3d ed. 1999). However, the district court's determination that there is no just reason for delay is reviewed only for abuse of discretion. *See Curtiss-Wright Corp.*, 446 U.S. at 10; *Livesay*, 19 F.3d 1443 (table), 1994 WL 56923, at **2 n.5; 19 James Wm. Moore et al., *Moore's Federal Practice* ¶ 202.06[4] (3d ed. 1999).

### 2.

Of primary concern in this case is whether the October 19 Order is final so that an appeal under Rule 54(b) may be taken. To be considered "final," an order must be "'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Curtiss-Wright Corp.*, 446 U.S. at 7 (quoting *Sears, Roebuck & Co.*, 351 U.S. at 436). While the exact definition of "claim" for purposes of Rule 54(b) is unsettled, *see Samaad v. City of Dallas*, 940 F.2d 925, 930-32 (5th Cir. 1991), a "claim" is generally understood to include all factually or legally connected elements of a case. *See Buckley v. Fitzsimmons*, 919 F.2d 1230, 1237 (7th Cir. 1990) (vacated on other grounds by 502 U.S. 801); *cf. Smith v. Benedict*, 279 F.2d 211 (7th Cir. 1960) (the term

-11-

"claim" refers to a cause of action); *Atkins, Kroll (Guam), Ltd. v. Cabrera*, 277 F.2d 922, 924 (9th Cir. 1960) (the term "claim" refers to a cause of action). This notion of connectedness also appears in *Moore's Federal Practice 3d* § 202.06[2], which states:

> [A] judgment is not final unless the claims disposed of are separable from the remaining claims against the same parties. *Separability* is an elusive term, and no reliable litmus test exists for determining when a claim is a distinct claim of relief. Courts, however, have concentrated on two factors: (1) the factual overlap (or lack thereof) between the claims disposed of and the remaining claims, and (2) whether the claims disposed of and the remaining claims seek separate relief.

(emphasis in original); *see also Curtiss-Wright Corp.*, 446 U.S. at 8 (district court should "consider such factors as whether the claims under review were separable from the others remaining to be adjudicated"). Thus, a judgment is not final for the purposes of Rule 54(b) unless the claims resolved are distinct and separable from the claims left unresolved.

Here, Diana presents four claims that are so intertwined (have so much factual overlap) as to be inseparable. The facts with regard to each tract of land are perhaps sufficiently unique that a technically distinct claim attaches to each tract: Daniel used different companies to funnel different sums of money to his parents so that they could purchase different tracts of land. However, the facts as they are material to the district court's view of how it should dispose of the case are identical: each tract of land is

restricted, which, as currently understood by the district court,[4] requires the Secretary of the Interior's approval before it may be encumbered. In addition, while Diana employs a variety of legal theories in arguing for relief, the relief she seeks—the declaration that she is the true owner of the land—is identical with regard to each tract of land. Accordingly, the facts giving rise to Diana's four claims are so overlapping that the certification under Rule 54(b) of an order disposing of only two of the claims was error.

Another way of understanding why Diana's claims are inseparably intertwined is to recognize that the district court was not really certifying the merits of Diana's claims to Tracts One and Two, but rather Leda and Bim's affirmative defense to Diana's claim—that any encumbrance on the tracts requires the Secretary of the Interior's approval. In general, "Rule 54(b) does not allow for certification of a defense." *W.L. Gore & Assocs., Inc. v. Int'l Med. Prosthetics Research Assocs., Inc.*, 975 F.2d 858, 863 (Fed. Cir. 1992); *see also Flynn & Emrich Co. v. Greenwood*, 242 F.2d 737, 741 (4th Cir. 1957). However, a defense may be certified when, as here, the defense is "implicitly and indirectly" certified with the claim against which it is raised. *W.L. Gore*, 975 F.2d at 863. Nonetheless, if a certain defense is applicable to all claims in an action—as the district court now understands the situation to be here—then we believe that the district court must adjudicate all the claims, not just certain selected claims, before an appeal may be

---

[4] Because we lack jurisdiction over this appeal, we decline to address the merits of the district court's determinations.

taken. Failure to follow all these steps unacceptably multiplies the burden imposed on the appellate court, presumably for the convenience of the district court, which, if affirmed on appeal, can be assured of its proposed disposition of the remaining claims. Accordingly, because the district court has only partially disposed of a class of claims that, as the district court now understands them, are so factually related that they should instead be disposed of together, we lack jurisdiction to hear this appeal.[5]

**3.**

We conclude by briefly examining whether the district court's certification order adequately articulated the determinations of finality and no just reason for delay that are required by Rule 54(b). While the rule's requirement that these determinations be stated explicitly in the district court's certification order is to some extent a formality, the requirement does provide district courts with one last opportunity to discover errors in their decision to certify an order for appeal. It is thus not surprising that the district court's certification order nowhere states that the October 19 Order is final, for in

---

[5] 28 U.S.C. §1291 only confers jurisdiction over final decisions of district courts, and as we have discussed, the district court has not certified a final judgment under Rule 54(b). Further, we will not read the district court's failed attempt to certify the October 19 Order under Rule 54(b) as a certification for interlocutory appeal under 28 U.S.C. §1292(b) because the language of the district court's certification order does not meet the requirements of §1292(b). *See Rodabaugh v. Cont'l Cas. Co.*, 62 F.3d 1429, 1995 WL 471082, at ** 2 (10th Cir. Aug. 10, 1995) (unpublished). Thus, under no statutory provision do we posses jurisdiction to hear the merits of Diana's appeal.

attempting to make this determination the court would presumably have caught the errors earlier discussed. In addition, given that the district court's certification order reversed an earlier order in which it held that the October 19 Order *was not* final, we believe that the district court should not only have made an express determination of finality, but also explained what circumstances have intervened to cause it to believe that the October 19 Order *was* now final. Accordingly, the district court's order failed to adequately determine whether, and for what reasons, the October 19 Order was "final."

With respect to the requirement that the district court determine whether there is no just reason for delay, the district court's certification order states that certification is "in the interest of judicial economy" and "encourage[s] a speedy resolution." These statements are not the magic phrase required by Rule 54(b)—which looks to whether there is "no just reason for delay"—and, more importantly, are problematic because they are conclusory and not supported by any reasoning. *See* 19 James Wm. Moore et al., *Moore's Federal Practice* § 202.06[3] (3d ed. 2000) (noting circuit split regarding requirement that district court supply reasoning for conclusion that certification is appropriate). However, in light of the dispositive errors noted earlier, it is unnecessary to decide whether the district court properly determined that there was no just reason for delay.

**III.**

For the foregoing reasons, we DISMISS this appeal without prejudice and REMAND for further proceedings consistent with this opinion.