PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

MARK JORDAN,

      Plaintiff-Appellant,

  v.

MICHAEL V. PUGH, Warden, ADX,
Florence, Colo.; J. YORK, S.I.S.
Technician, ADX; R.E. DERR, Case
Manager, ADX; B. SELLERS , S.I.S.
Technician, ADX; and STANLEY
ROWLETT, Unit Manager, ADX,

      Defendants-Appellees.

No. 04-1095

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 02-MK-1239 (PAC))**

---

Shannon Wells Stevenson (Jonathan W. Rauchway with her on the briefs), Davis, Graham & Stubbs, LLP, Denver, Colorado, for Plaintiff-Appellant.

Michael C. Johnson, Assistant United States Attorney (Johns W. Suthers, United States Attorney, with him on the response brief, and William J. Leone, Acting United States Attorney, with him on the supplemental response brief), Denver, Colorado, for Defendants-Appellees.

---

Before **SEYMOUR, BRORBY,** and **McCONNELL**, Circuit Judges.

**McCONNELL**, Circuit Judge.

Bureau of Prisons regulations say inmates may not "act as [a] reporter" or "publish under a byline." 28 C.F.R. § 540.20(b). Plaintiff Mark Jordan is a federal inmate who was punished for publishing under a byline after he successfully submitted two articles for publication in a magazine. In this lawsuit, Mr. Jordan challenges the BOP regulations on several grounds, including unconstitutional overbreadth and vagueness. The district court granted the Defendants' motion for summary judgment on Plaintiff's facial vagueness claim and on the individual defendants' qualified immunity defense, which left Mr. Jordan with claims that the regulation is overbroad, that it is vague as applied, that it violates his First Amendment rights as applied, and that BOP officials punished him in retaliation for protected speech. After entering final judgment on the facial vagueness claim and the qualified immunity defense, the court stayed the litigation pending appeal of summary judgment.

Rule 54(b) of the Federal Rules of Civil Procedure permits the district court to enter separate final judgment on one or more but fewer than all claims in a lawsuit if the claims are separable and distinct from the remaining claims and if there is no just reason for delay. Because the facial vagueness claim is not separable and distinct from the claims that remain before the district court, we lack subject matter jurisdiction and DISMISS the appeal.

I.

Mr. Jordan was a federal prisoner at the United States Penitentiary, Administrative Maximum (ADX), in Florence, Colorado at all times relevant to this lawsuit. During his incarceration at ADX, Mr. Jordan published two articles in *OFF!* magazine, a publication of Off Campus College at the State University of New York at Binghamton. After each article was published, officials at ADX sanctioned Mr. Jordan for violating the following regulation:

> (a) An inmate may write through "special mail" to representatives of the news media specified by name or title (see § 540.2(b)).
>
> (b) The inmate may not receive compensation or anything of value for correspondence with the news media. The inmate may not act as reporter or publish under a byline.
>
> (c) Representatives of the news media may initiate correspondence with an inmate. Staff shall open incoming correspondence from representatives of the media and inspect for contraband, for its qualification as media correspondence, and for content which is likely to promote either illegal activity or conduct contrary to Bureau regulations.

28 C.F.R. § 540.20. According to prison officials, Mr. Jordan's publications violated the rule that inmates may not "publish under a byline."

Mr. Jordan describes his first article as an "experiential essay" in which he criticized the criminal justice system and complained about his conditions of confinement, including his treatment by BOP staff. Mr. Jordan submitted the essay sometime before April 3, 2001, and it was published in the Spring 2001

issue of *OFF!* under the title, "The Social Bonds of the Have-Nots." The publication credited "Mark Jordan" as the author. *Id.* at 3, paras. 4-5.

On April 3, 2001, several copies of the Spring 2001 issue of *OFF!* arrived in the ADX mail room. The next day, Defendant Sellers issued an incident report informing Mr. Jordan that

> several pamphlets entitled *OFF!* were received at this institution's mail room . . . addressed to several inmates housed at this facility, including yourself. [The pamphlet] contained an article written by yourself with the byline, "Mark Jordan." In accordance with . . . § 540.20(b), inmates may not act as a reporter or publish under a byline. An inmate's contact with the news media is regulated to insure the orderly and safe operation of the institution.

Incident Report, Apr. 4, 2001, Motion to Dismiss, R. Doc. 47, Attachment 4, at 1. The incident report charged Mr. Jordan with violations of Code 327, "Unauthorized Contact with the Public," and Code 399, "Conduct which Disrupts or Interferes with the Security or Orderly Running of the Institution." *See id.*; 28 C.F.R. § 541.13, tbl. 3. On April 6, 2001, the Unit Discipline Committee ("the Committee") found Mr. Jordan guilty of unauthorized contact with the public under Code 327 but found him not guilty of disruption or interference with prison security under Code 399. The Committee sentenced Mr. Jordan to 30 days of commissary restriction, which it suspended pending 180 days of clear conduct. After his disciplinary hearing, Mr. Jordan received his copy of *OFF!*.

During the disciplinary hearing, Mr. Jordan asked the Committee chairman, Defendant Rowlett, what he had done to violate the regulation. Mr. Jordan believed that submission of a manuscript was authorized by § 540.20(a) and (c), which allow inmates and the news media to correspond. Mr. Rowlett told Mr. Jordan that he could not publish articles under his own name because inmates who might be offended by their contents could then identify the author, creating a security risk. Mr. Jordan proposed that in the future he would use a pseudonym in correspondence with the media in order to shield his identity. Mr. Rowlett told him that would be good.

Mr. Jordan appealed the Committee's decision to the warden, Defendant Pugh, who denied the appeal on the basis of Mr. Jordan's admission that he "mailed a personal experiential essay [he] had written to the editor of a publication titled 'OFF.'" BP-229 Response, April 27, 2001, R. Doc. 47, Attachment 1 at 2. On May 1, 2001, Mr. Jordan appealed the warden's decision to the regional office of the BOP. *Id.* at 3. The regional director denied the appeal on the grounds that Mr. Jordan received due process in the disciplinary action and the Committee's ruling was supported by evidence that he was "the reporter of an article," despite the policy that an "inmate may not act as [a] reporter or publish under a byline." Reg. Admin. Remedy App. Resp., June 11, 2001, R. Doc. 47, Attachment 1, at 4. Mr. Jordan's final appeal was denied on

August 24, 2001.  Central Office Admin. Remedy Appeal, Aug. 24, 2001, R. Doc. 47, Attachment 1, at 6.

In early September 2001, Mr. Jordan sent the editor of *OFF!* a second essay, which criticized the DNA Backlog Elimination Act of 2000, U.S. law enforcement schemes, and prison officials.  Mr. Jordan requested that the essay appear under the pseudonym "Josef Shevitz" if the editor chose to publish it. The essay was published in the Fall 2001 issue of *OFF!* as "Beware! Surveillance Society, by Josef Shevitz."  It has also appeared in translation in two German publications, although Mr. Jordan never submitted the article to them for publication.

Despite Mr. Jordan's efforts to conceal his identity, prison officials discovered that Josef Shevitz was his pen name.  On November 9, 2001, Defendant York issued an incident report charging Mr. Jordan with unauthorized contact with the public under Code 327 for submitting an article "under the byline of 'Shevitz.'"  Incident Report, Nov. 6, 2001, R. Doc. 53, Attachment E, at 1; Jordan Decl., R. Doc. 52, at 6, para. 20.  According to the report, "Jordan's sending of his article to [*OFF!*] constitutes an unauthorized contact with the public.  Jordan has been sanctioned for code 327 before and is aware that he is not authorized to publish under a byline."  Incident Report, Nov. 6, 2001, R. Doc. 53, Attachment E, at 1.

After a disciplinary hearing, the Committee found Mr. Jordan guilty of unauthorized contact with the public based on his "admission that [he] used the byline of 'Joseph Shevitz' so he could not be identified as an inmate. He was sentenced to 30 days' commissary restriction and 14 days' television and radio restriction. His appeals to the warden, the regional director, and the BOP central office were denied.

After exhausting his administrative remedies, Mr. Jordan filed a pro se complaint challenging § 540.20 on several grounds. His Second Amended Complaint listed six claims: (1) the regulation is unconstitutionally overbroad; (2) the regulation is unconstitutionally vague on its face; (3) the regulation violates the First Amendment as applied; (4) prison officials punished him in retaliation for the exercise of his First Amendment rights; (5) the regulation is vague as applied; and (6) the regulation violates his right to due process and is fundamentally unfair. Second Amended Complaint, R. Doc. 39, at 10–19. He requested a declaratory judgment that 28 C.F.R. § 540.20(b) is unconstitutional on its face and as applied to him; an order enjoining enforcement of § 540.20(b), compelling BOP officials to expunge all record of his violation, and enjoining the Defendants from considering the violation in any future proceedings; and nominal, compensatory, and punitive damages, and costs. *Id.* at 21–22.

Evaluating the complaint under *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972), the district court discerned four claims for relief: (1) facial vagueness; (2) facial overbreadth; (3) an as-applied First Amendment violation; and (4) retaliation for the exercise of First Amendment rights.  Order on Cross-Motions for Summary Judgment, R. Doc. 85 at 2-3.[1]  On cross-motions for summary judgment, the district court granted the Defendants' motion in part, holding that the regulation was not unconstitutionally vague on its face and that the individual defendants were entitled to qualified immunity from all of Mr. Jordan's claims.  The court made a specific finding that there was no just reason to delay the entry of final judgment on these two claims and entered partial judgment pursuant to Rule 54(b).  The court stayed the remaining claims pending appeal of the order granting summary judgment.

## II.

## A.

"A statute can be impermissibly vague for either of two independent reasons.  First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits.  Second, if it authorizes or

---

[1]In addition to the four claims identified by the district court, Mr. Jordan claims that § 540.20(b) is vague as applied to his conduct. *See* Second Amended Complaint, R. Doc. 39, at 17.  The district court did not rule on this claim; therefore, we assume that it is still pending before the district court.

even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000) (citing *City of Chicago v. Morales*, 527 U.S. 41, 56–57 (1999)). Because "we can never expect mathematical certainty from our language," *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1973), a court deciding whether a challenged statute provides fair notice often considers factors such as the enactment's purpose, the harm it attempts to prevent, whether there is a scienter requirement, and the interpretations of individuals charged with enforcement. *See, e.g.*, *id*. at 110–14.

The district court focused on the question of notice to a person of ordinary intelligence. Consulting dictionary definitions of the words in § 540.20(b), the district court noted that "the regulation prohibits inmates from performing the function of a reporter, i.e., from broadcasting news. It also prohibits inmates from distributing news in printed form under the inmate's name." Order, R. Doc. 85, at 8–9 (citing Merriam-Webster's Collegiate Dictionary (10th ed.)). Based on this reading of the regulation, the court found that "[a] person of ordinary intelligence could determine, in specific circumstances, what conduct is prohibited by the regulation." *Id.*

Mr. Jordan argues that § 540.20(b) is unconstitutionally vague and ambiguous and that the district court's conclusion fails to resolve the linguistic uncertainties. The conclusion that § 540.20(b) prohibits inmates from

"broadcasting news," he argues, does not clarify the vague language of the regulation because the court did not identify what conduct or contents are prohibited, i.e., what counts as "broadcasting" and "news." For example, were his published articles "news" or mere "experiential essays"? Mr. Jordan similarly disputes the clarity of the prohibition on publishing under a byline. The district court concluded that "publish under a byline" is not vague because it prohibits inmates from "distributing news in printed form under the inmate's name." Order, R. Doc. 85, at 9. But this does not clarify whether pseudonymous publications would violate the regulation. Mr. Jordan points out that under the court's definition, his second article would not qualify as publishing under a byline because it was published under the name "Josef Shevitz," which is not an "inmate's name."

Mr. Jordan contends that this ambiguity is compounded by deficiencies under the *Grayned* factors. First, he argues that the lack of a scienter requirement exposes inmates to punishment based on the conduct of third parties. He maintains that inmates do not decide whether to publish; publishers do. As a result, he argues, the regulation punishes activity outside the inmate's control, and the ban on publication under a byline therefore fails to identify specific conduct that inmates must avoid.

Second, Mr. Jordan argues that the stated purpose of the regulation

-10-

contradicts its language, thereby confusing its meaning. According to the regulations themselves, the restrictions on correspondence are intended to "encourage[] correspondence that is directed to socially useful goals," 28 C.F.R. § 540.10, and provide the public with access to information about prisons. *Id.* § 540.60. This confusion is aggravated, Mr. Jordan argues, by other regulations aimed at inmate contact with the media. For example, the regulations expressly permit members of the news media to interview inmates and to publish information that those inmates give them. 28 C.F.R. § 540.61. Inmates are also permitted to "prepare a manuscript for private use or for publication while in custody without staff approval." *Id.* § 551.81. A "manuscript" is defined as "fiction, nonfiction, poetry, music and lyrics, drawings and cartoons, and other writings of a similar nature." *Id.* § 551.80. Manuscripts may not be circulated within the prison, but they may be mailed as general correspondence. *Id.* § 551.82. Mr. Jordan maintains that the policy of encouraging inmates to communicate with outside parties and to prepare "manuscripts" is inconsistent with § 540.20(b)'s flat prohibition on acting as a reporter or publishing under a byline.

Third, Mr. Jordan argues that the regulation fails to provide notice of the harm it seeks to prevent. The Defendants argue that § 540.20(b) is intended to serve "penological interests, the primary interest being maintaining security

within a prison," which is particularly important with respect to correspondence because "articles about matters within a prison can create a danger of violence or the threat of violence." Motion to Dismiss, R. Doc. 24, at 10 (citing *Martin v. Rison*, 741 F. Supp. 1406, 1414 (N.D.Cal. 1990)). Mr. Jordan questions the congruence between this purpose and the breadth of the regulation, and he argues that inmates cannot assess whether their conduct might cause the harm the regulation seeks to prevent.

Finally, Mr. Jordan points to prison officials' inconsistent interpretation of the regulation. During his first disciplinary hearing, Defendant Rowlett told Mr. Jordan that it would be a good idea to publish future essays under a pseudonym. Rowlett's advice notwithstanding, Defendants York and Derr punished Mr. Jordan for publishing his second essay under a pseudonym. The Defendants dismiss the conflicting interpretations as merely individual misunderstandings that do not indicate vagueness in the regulation itself.

B.

Before we consider the merits, we must determine whether we have subject matter jurisdiction over Mr. Jordan's appeal. Our jurisdiction is invoked under 28 U.S.C. § 1291, which grants jurisdiction over appeals from final orders of the district courts. The district court entered partial judgment under the authority of

-12-

Rule 54(b), which provides:

> When more than one claim for relief is presented in an action,
> whether as a claim, counterclaim, cross-claim, or third-party claim,
> or when multiple parties are involved, the court may direct the entry
> of a final judgment as to one or more but fewer than all of the claims
> or parties only upon an express determination that there is no just
> reason for delay and upon an express direction for the entry of
> judgment.

Fed. R. Civ. P. 54(b). Rule 54(b) establishes three prerequisites for appeal of a separate final judgment on fewer than all claims in a lawsuit: (1) multiple claims; (2) a final decision on at least one claim; and (3) a determination by the district court that there is no just reason for delay. *See, e.g.*, 10 Wright, Miller & Kane, Fed. Practice & Proc. § 2656, at 48–60 (3d ed. 1998).

To be final for purposes of Rule 54(b), an order must be "'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7 (1980) (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436 (1956)). The controlling jurisdictional question is thus whether Mr. Jordan's facial vagueness claim is "distinct and separable from the claims left unresolved." *Old Republic Ins. Co. v. Durango Air Serv.*, 283 F.3d 1222, 1225 (10th Cir. 2002) (quoting *Okla. Turnpike Auth. v. Bruner*, 259 F.3d 1236, 1241 (10th Cir. 2001)). Whether the judgment resolves a separate claim is a question of law subject to de novo review. *See Bruner*, 259 F.3d at 1242 (citing *Curtiss-Wright Corp.*, 446

-13-

U.S. at 10). We hold that the district court's grant of summary judgment did not dispose of a separate claim for relief. The district court therefore erred in certifying partial judgment, and we lack appellate jurisdiction.

For purposes of Rule 54(b), a claim comprises "all factually or legally connected elements of a case," *Bruner*, 259 F.3d at 1242, but there is no bright-line rule to distinguish multiple claims, which may be appealed separately, from multiple legal grounds in a single claim, which may not. *See* 10 Wright, Miller & Kane § 2657 at 67–68. This distinction is based largely on practical concerns, particularly the question whether a subsequent appeal of the claims before the district court will require the court of appeals to revisit the same issues decided in the first appeal. As the Seventh Circuit has explained,

> The test for separate claims under the rule is whether the claim that is contended to be separate so overlaps the claim or claims that have been retained for trial that if the latter were to give rise to a separate appeal at the end of the case the court would have to go over the same ground that it had covered in the first appeal.

*Lawyers Title Ins. Corp. v. Dearborn Title Corp.*, 118 F.3d 1157, 1162 (7th Cir. 1997); *see also Sears, Roebuck & Co.*, 351 U.S. at 436 (claims are not distinct under Rule 54(b) if they are inherently inseparable or cannot be decided independently of each other).

To determine whether separate appeals will be redundant, courts consider whether the allegedly separate claims turn on the same factual questions, whether

they involve common legal issues, and whether separate recovery is possible. *See* James Wm. Moore, et al., Moore's Fed. Prac. 3d § 202.06[2] (3d ed. 1999) (listing "(1) the factual overlap (or lack thereof) between the claims disposed of and the remaining claims, and (2) whether the claims disposed of and the remaining claims seek separate relief" as determining separate claims under Rule 54(b)), *cited in Bruner*, 259 F.3d at 1242; *Gas-A-Car v. Am. Petrofina, Inc.*, 484 F.2d 1102, 1105 (10th Cir. 1973).

C.

The district court entered summary judgment in favor of the defendants on Mr. Jordan's facial vagueness claim, while retaining jurisdiction over his facial overbreadth and as-applied claims. We conclude that these are not separate claims. Although not identical, vagueness and overbreadth challenges in the First Amendment context are alternative and often overlapping grounds for the same relief, namely invalidation of the offending regulation. Overbreadth and vagueness claims generally involve the same nucleus of facts, and require similar analysis of the terms and reach of the challenged provision. Almost inevitably, if vagueness and overbreadth are considered in two separate appeals, the court "would have to go over the same ground that it had covered in the first appeal." *Lawyers Title Ins.*, 118 F.3d at 1162.

The Supreme Court has "traditionally viewed vagueness and overbreadth as logically related and similar doctrines." *Kolender v. Lawson*, 461 U.S. 352, 358 n.8 (1983). The common rationale behind the two doctrines led one commentator to conclude that "First Amendment vagueness doctrine—as distinct from ordinary or non-First Amendment vagueness doctrine—is best conceptualized as a subpart of First Amendment overbreadth doctrine." Richard H. Fallon, Jr., *Making Sense of Overbreadth*, 100 Yale L.J. 853, 904 (1991). Overbreadth and vagueness may overlap when the challenged statute is so unclear in its scope that officials enforce it in an overbroad manner. Similarly, a vague statute may be functionally overbroad if it causes affected persons to act as though the statutory language had the broadest possible meaning. Another commentator has gone so far as to assert "that when the Supreme Court has spoken of the facial vagueness of statutes touching first amendment rights, it has seldom if ever been referring to a constitutional vice different from the latent vagueness of an overbroad law." Note, *The First Amendment Overbreadth Doctrine*, 83 Harv. L. Rev. 844, 873 (1970).

Facial challenges for vagueness and overbreadth involve a common preliminary inquiry about the statute's effect on constitutionally protected activity. To mount a facial vagueness challenge, the litigant must show that the potential chilling effect on protected expression is "both real and substantial."

-16-

*Erznoznik v. City of Jacksonville*, 422 U.S. 205, 216 (1975). Similarly, a facial overbreadth challenge requires that "the overbreadth of a statute . . . not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973); *see also Virginia v. Hicks*, 539 U.S. 113, 119 (2003). When considering "a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 494 (1982). Under either theory, a facial challenge is available only if the answer is yes. Both of Mr. Jordan's facial challenges therefore require the court to determine whether § 540.20(b)'s prohibition on "act[ing] as [a] reporter" and "publish[ing] under a byline" affects a substantial amount of protected activity.

The similarity of the two doctrines is reflected in practice, as facial challenges are commonly based on both overbreadth and vagueness. *See, e.g.*, *Flipside*, 455 U.S. at 491 (rejecting a facial vagueness and overbreadth challenge to a drug paraphernalia ordinance); *Grayned*, 408 U.S. 104 (1972) (rejecting a facial vagueness and overbreadth challenge to a city anti-noise ordinance). In *Coates v. Cincinnati*, 402 U.S. 611 (1971), the Court held an ordinance facially unconstitutional on both overbreadth and vagueness grounds, concluding that it was "unconstitutionally vague because it subjects the exercise of the right of

assembly to an unascertainable standard, and unconstitutionally broad because it authorizes the punishment of constitutionally protected conduct." *Id.* at 614; *see also Dombrowski v. Pfister*, 380 U.S. 479 (1965) (holding Louisiana's Subversive Activities and Communist Control Law unconstitutional on its face because the definition of "subversive person" was "unduly vague, uncertain, and broad"); *Baggett v. Bullitt*, 377 U.S. 360 (1964) (holding a loyalty oath statute facially unconstitutional because of a similar definition of "subversive person").

Even more telling are cases in which the Supreme Court has found it unnecessary to address a plaintiff's overbreadth claim on the ground that it had already found the statute unconstitutionally vague. In *City of Chicago v. Morales*, 527 U.S. 41 (1999), the Court held that an anti-gang ordinance was unconstitutionally vague on its face because it failed to set guidelines for enforcement. *Id.* at 60. The plaintiffs also challenged the ordinance as facially overbroad, but the plurality declined to reach the question. *Id.* at 55. Similarly, in *Smith v. Goguen*, 415 U.S. 566 (1974), the Court found a Massachusetts flag-misuse statute unconstitutionally vague on its face but declined to reach the plaintiff's overbreadth claim. *Id.* at 567–68. These cases demonstrate that facial vagueness and overbreadth are two alternative theories for recovery on the same claim, rather than two separate claims. If they were separate claims, the Court would have had to consider both.

The fact that Mr. Jordan's facial vagueness and overbreadth claims seek the same relief also indicates that they are not distinct and separable claims, but rather alternative theories for recovery on the same claim. A claimant presents multiple claims for relief "when the possible recoveries are more than one in number and not mutually exclusive." 10 Wright, Miller & Kane § 2657, at 76; *cf. Seatrain Shipbuilding Corp. v. Shell Oil Co.*, 444 U.S. 572 (1980) (holding that two challenges to the Secretary of Commerce's release of shipping restrictions, one seeking to overturn a particular exercise of authority and the other seeking to invalidate his authority entirely, were separate claims under Rule 54(b)). Facial vagueness and overbreadth challenges seek the same remedy—invalidation of the regulation. *See, e.g.*, Kathleen M. Sullivan & Gerald Gunther, First Amendment Law 333 (1999) ("Vagueness challenges in the First Amendment context, like overbreadth challenges, typically produce facial invalidations . . . ."). For purposes of Rule 54(b), vagueness and overbreadth are alternative theories underlying a single claim.

Rule 54(b) is not intended to provide a mechanism for splitting multiple claims into separate lawsuits. Partial final judgment is intended to serve the limited purpose of protecting litigants from undue hardship and delay in lawsuits involving multiple parties or multiple claims. *See Bruner*, 259 F.3d at 1242 (citing *Gas-A-Car*, 484 F.2d at 1105). Application of the rule should preserve the

-19-

"historic federal policy against piecemeal appeals." *Curtiss-Wright Corp.*, 446 U.S. at 8 (quoting *Sears, Roebuck & Co.*, 351 U.S. at 438). Preventing separate appeals of facial claims of vagueness and overbreadth is consistent with the policy rationale behind Rule 54(b). To be sure, once parties have expended the effort of briefing and argument on appeal, it may appear wasteful and inefficient for the appellate court to decline to rule. But in the long run it will be less wasteful and more efficient for district and appellate courts to adhere to the rule that only separate and distinct claims can be isolated for appeal under Rule 54(b). Interrelated legal claims and alternative theories for recovery should be litigated together and appealed together.

D.

Mr. Jordan urges the Court to exercise pendent appellate jurisdiction over the district court's ruling that the Defendants are entitled to qualified immunity on their damages claims. He concedes that we lack independent jurisdiction over the qualified immunity ruling, but he maintains that the Court should exercise its discretion to consider the issue because it is "inextricably intertwined" with his facial vagueness claim. *See Moore v. City of Wynnewood*, 57 F.3d 924, 930 (10th Cir. 1995) (explaining that pendent appellate jurisdiction is appropriate "where the otherwise nonappealable decision is 'inextricably intertwined' with the appealable decision, or where review of the nonappealable decision is 'necessary

to ensure meaningful review' of the appealable one") (quoting *Swint v. Chambers County Comm'n*, 514 U.S. 35, 51 (1995)).  Because we lack jurisdiction over the substantive claim, we have no occasion to exercise pendent appellate jurisdiction over the qualified immunity defense.

## III.

In sum, the district court's grant of summary judgment did not address a separable and distinct claim for relief.  The facial vagueness challenge on appeal and the facial overbreadth challenge that remains before the district court are alternative legal theories that comprise a single claim for relief, namely, that the BOP cannot punish Mr. Jordan under § 540.20(b) because it is unconstitutional on its face.  Because the district court did not enter judgment on an individual claim for relief, certification of the judgment under Rule 54(b) was not proper, and we lack subject matter jurisdiction.  This appeal is therefore DISMISSED.