In re Susan Patrice SUKUT, also known as Susan Patrice Korth, doing business as Denver .45 LLC, doing business as Metro Concrete Works Inc., and Thomas George Sukut, Debtors.

James Ries and Helen Ries, Plaintiffs–Appellants,

v.

Susan Patrice Sukut and Thomas George Sukut, Defendants–Appellees.

BAP Nos. CO–07–059, CO–07–062. Bankruptcy No. 05–29075–EEB. Adversary No. 05–01872–EEB.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Dec. 18, 2007.

---

45. *Castletons,* 990 F.2d at 554.

46. *Id.* at 556.

47. *Id.*

Michael Lawrence of Michael Lawrence, LLC, Denver, CO, for Plaintiffs–Appellants.

Mary V. Sooter (Darrell M. Daley with her on the brief), of Faegre & Benson, LLP, Boulder Colorado, for Defendants–Appellees.

Before CLARK, MICHAEL, and KARLIN [1], Bankruptcy Judges.

## OPINION

CLARK, Bankruptcy Judge.

Appellants James and Helen Ries appeal two bankruptcy court orders denying their motions to "reconsider" two prior rulings. The motions were made in an adversary proceeding filed by the Rieses against Debtors Susan and Thomas Sukut. Because we find that these two appeals were not taken from final orders, this Court is without appellate jurisdiction to consider the Rieses' claims and the appeals are hereby DISMISSED.

## I. BACKGROUND

Appellants James and Helen Ries purchased a boat and RV storage facility from Debtor Susan Sukut ("Susan") in 2001 for $910,000. The Rieses retained $100,000 of the purchase price pending issuance of a certificate of occupancy, which they received in November 2001. By the time the parties' dispute arose, the Rieses had paid Susan approximately $28,000 of the retainer. Susan sued the Rieses in Colorado state court for the remaining $72,000 of the contract price, and the Rieses counterclaimed for rescission of the agreement. The Rieses' claims against Susan were based on alleged misrepresentations made in a written market analysis that Susan had prepared and provided to them during negotiations. The Rieses claimed that Susan "knew or should have known that the marketing analysis overstated the capacity and profitability of the property."

Discovery proceeded normally in the state court action for a period of time, after which Susan began failing to respond to discovery requests, causing the Rieses to file both a motion to compel and, subsequently, a motion for default judgment. After the motion to compel was filed, Susan's counsel moved to withdraw from further representation. The state court allowed Susan's counsel to withdraw, and gave Susan sixty days in which to obtain new counsel, respond to outstanding discovery, and respond to pending motions. Susan failed to respond, and the state court entered a default judgment that dismissed her claims and granted the Rieses a money judgment on their counterclaim. Significantly, the state court judgment includes a "finding" that Susan "fraudulently induced the Rieses to purchase the real property at issue by overstating its expected profitability." Approximately nineteen months after entry of the state court judgment, Susan and her husband, Thomas Sukut ("Thomas"), filed a joint petition for Chapter 7 relief.

The Rieses filed an adversary proceeding against both Susan and Thomas, seeking to except their judgment from discharge pursuant to 11 U.S.C. § 523(a)(2). In March 2006, the bankruptcy court granted a motion to dismiss Thomas from the adversary proceeding (the "Dismissal Order"), on the ground that the Colorado Family Expenses Act did not render him liable for Susan's debt. Although the Rieses appealed the Dismissal Order to this Court, their initial appeal was dismissed for failure to prosecute, after they failed to respond to an order to show cause why the appeal should not be dismissed as

---

1. Honorable Janice Miller Karlin, United States Bankruptcy Judge, United States Bankruptcy Court for the District of Kansas, sitting by designation.

interlocutory.[2] In the interim, and at the bankruptcy court's direction, the Rieses and Susan filed briefs on the preclusive effect of the state court judgment. On August 1, 2006, the bankruptcy court issued a published order determining that "the state court default judgment in favor of the Rieses does not preclude litigation of the Plaintiff's allegations of fraud in this adversary proceeding" (the "Estoppel Order"). Under the Estoppel Order, the Rieses would not be allowed to prove their case of non-dischargeability simply by submission of the state court judgment, but would need to establish Susan's fraudulent intent at trial.

The Rieses did not immediately appeal the Estoppel Order but, nearly seven months after the order was entered, they filed a motion to "reconsider" it.[3] Shortly after the filing of that motion, and nearly a year after the dismissal judgment had entered, the Rieses also filed a motion to reconsider the Dismissal Order. While the two motions to reconsider were pending before the bankruptcy court, the Rieses and the Sukuts executed an agreement to jointly request a stay of the adversary proceeding and, in the event that the motion for reconsideration of the Estoppel Order was denied, to submit a joint motion to certify the finality of the orders of denial, stay further proceedings, and proceed with an appeal of the rulings on both motions for reconsideration.

■ On May 4, 2007, the bankruptcy court denied the Rieses' motion to reconsider the Estoppel Order ("Estoppel Reconsideration Order"), and on May 10, 2007, it denied their motion to reconsider the Dismissal Order ("Dismissal Reconsideration Order"). On May 17, pursuant to the parties' agreement, the bankruptcy court entered a separate order that "certified" both Reconsideration Orders "as final pursuant to Fed.R.Civ.P. 54(b)."[4] The Rieses appealed both Reconsideration Orders with a single notice of appeal on May 14.[5] This Court construed the single notice of appeal as two notices of appeal, BAP Appeal No. CO–07–59 (the Rieses' appeal of the Estoppel Reconsideration Order), and BAP Appeal No. CO–07–62 (appeal of the Dismissal Reconsideration

---

**2.** It does not appear that an order dismissing Thomas was ever entered, although the ruling is set forth in a minute entry dated March 16, 2006, which is signed by the bankruptcy court clerk. The Rieses' motion to extend time to appeal that decision was denied by the bankruptcy court, and the Rieses filed their notice of appeal, which was either untimely or premature (*See* Fed. R. Bankr.P. 8002(a)), on April 14, 2006. The appeal (BAP Appeal No. CO–06–39) was dismissed by this Court on May 8, 2006.

**3.** Neither the Federal Rules of Civil Procedure nor the Federal Rules of Bankruptcy Procedure provide for a motion to reconsider. Such motions are typically treated as motions to alter or amend (FRCP 59, made applicable to bankruptcy cases by FRBP 9023) if they are filed within ten days of the judgment. Motions filed more than ten days after entry of the judgment or order are treated as mo-

tions for relief from the judgment (FRCP 60(b), made applicable to bankruptcy cases by FRBP 9024). In addition, FRBP 8015 provides for motions for "rehearing," which are made after entry of a judgment, but must be filed within ten days of its entry. Since appellants' motions for rehearing were not filed for several months after entry of the orders sought to be reviewed, they can only be construed as Rule 60(b) motions for relief.

**4.** *Bankruptcy Court Order*, in Appendix filed in BAP Appeal CO–07–059("Appendix") at 175.

**5.** Appellate review of a denial of a Rule 60(b) motion does not involve review of the underlying judgment. *Van Skiver v. United States*, 952 F.2d 1241,1243 (10th Cir.1991). In any event, the Rieses' notices of appeal, which specify only the Reconsideration Orders, do not purport to include the orders of which reconsideration was sought.

Order). However, this decision resolves both of the appeals.

## II. APPELLATE JURISDICTION

■ This Court has jurisdiction to hear timely-filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[6] A decision is considered final "if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'"[7] In this case, the appealed orders are the bankruptcy court's denial of appellants' motions to reconsider two previous orders: 1) dismissing all of the plaintiffs' claims against one of two defendants in the adversary proceeding; and 2) declaring that plaintiffs' state court default judgment was insufficient to preclude the remaining defendant from litigating the issue of fraud.

This Court's appellate jurisdiction is derived from 28 U.S.C. § 158, which grants such jurisdiction only from "final" judgments and orders of the bankruptcy courts. Neither the Reconsideration Orders nor the underlying orders themselves marked the end of the Rieses' adversary proceeding. In fact, the Estoppel Reconsideration Order set a status and scheduling conference for the underlying adversary proceeding for thirty days after its entry. Thus, neither of the orders sought to be appealed is "final" in the sense that it ends the litigation, and neither is therefore ripe for appellate review.

There are limited exceptions to the general rule of finality. The one relied upon in the present appeals is Rule 54(b) of the Federal Rules of Civil Procedure,[8] which provides that, in cases involving multiple claims or multiple parties, trial courts "may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." All parties to these appeals contend that the bankruptcy court's Rule 54(b) certification of the Reconsideration Orders vests this Court with appellate jurisdiction to review them. Moreover, counsel jointly urge this Court to essentially "overlook" any jurisdictional defects that may exist, asserting that neither side will appeal the jurisdictional issue.

■ An appellate court, however, has "an independent duty to inquire into its jurisdiction over a dispute, even where neither party contests it and the parties are prepared to concede it."[9] Furthermore, "[a] jurisdictional defect cannot be cured by means of a rule 54(b) certification."[10] We emphasize that no court may ignore a defect in its own jurisdiction on the basis of a promise that its ruling will not be appealed. Our duty as an appellate court is to apply the law as it is written and as it has been interpreted by the United States Supreme Court and the Tenth Circuit Court of Appeals. We neither act outside of our jurisdiction, nor render decisions

---

6. 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr.P. 8002. No party to these appeals has elected to have the district court hear the appeals.

7. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (*quoting Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945)).

8. Made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7054.

9. *In re Am. Ready Mix, Inc.*, 14 F.3d 1497, 1499 (10th Cir.1994).

10. *McKinney v. Gannett Co., Inc.*, 694 F.2d 1240, 1247 (10th Cir.1982).

that are contrary to law, based on a guarantee that our decisions will not be reversed. Therefore, we consider the efficacy of the bankruptcy court's certification.

■ In the Tenth Circuit there are "three prerequisites for appeal" of orders certified under Rule 54(b): (1) "multiple claims" in the lawsuit; (2) a "final decision" on at least one of those claims; and (3) the trial court's determination that "there is no just reason for delay." [11] On the basis of the parties' joint motion, the bankruptcy court certified the finality of the Reconsideration Orders pursuant to Rule 54(b), but did not make "an express determination that there [was] no just reason for delay." [12]

■ "Rule 54(b) allows entry of judgment only upon *final* disposition of at least one claim, or of all claims involving at least one party." [13] Significantly, Rule 54(b) does not eliminate the need for finality. Rather, it simply allows a trial court to find that its judgment either (1) fully and finally disposes of one or more, but less than all, of the "claims" in the action, or (2) resolves all claims against one or more, but less than all, of the parties, and that it is appropriate for immediate appeal (*i.e.*, that "there is no just reason for delay"). Thus, under Rule 54(b), a trial court must determine, first, whether its order is "final" and, if so, whether the relief granted is sufficiently separable that an immediate appeal of the order makes sense within the context of the entire case.[14] Neither of these

determinations was made with respect to the Reconsideration Orders.

■ The Dismissal Order, which eliminated Thomas from the adversary proceeding, is the kind of order that is likely to satisfy Rule 54(b) finality. However, the finality of an order denying an apparently untimely motion to reconsider such an order is much less clear. Nonetheless, that finality determination need not be made in this action since the Dismissal Reconsideration Order was also not properly certified with respect to its separability from the remainder of the adversary proceeding. In determining the appropriateness of a Rule 54(b) certification, courts should weigh the "policy of preventing piecemeal appeals against the inequities that could result from delaying an appeal." [15] Specifically, a certified claim should be sufficiently separable from the remaining claims "such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals." [16] However, the Dismissal Reconsideration Order lacks both an "expression" that "there is no just reason for delay," and the required consideration and determination of that standard.

■ A "claim" for purposes of Rule 54(b) consists of "all factually or legally connected elements of a case." [17] The Estoppel Reconsideration Order resolves only the "issue" of the preclusive effect that will be given to the state court judgment's finding of fraud. It does not fully resolve plaintiffs' "claim" that Susan owes them a

11. *Jordan v. Pugh*, 425 F.3d 820, 826 (10th Cir.2005).

12. *Id.*

13. 15B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure 2d* § 3915.2 (2007) (emphasis added).

14. *The SCO Group, Inc., v. Novell, Inc.*, 2007 WL 2684537 at *1 (D.Utah Sept.7, 2007).

15. *Id.*

16. *Id.*

17. *Jordan v. Pugh*, 425 F.3d at 827 (citation omitted).

debt that is not dischargeable in bankruptcy. The parties contend that the ruling on the preclusive effect of the state court judgment effectively resolves all of plaintiffs' claims because plaintiffs have agreed to dismiss the adversary proceeding in the event they are unsuccessful on appeal.[18] However, the parties' "conditional agreement" to dismiss only emphasizes the lack of finality of the orders. Had the parties stipulated to a dismissal, and an order of dismissal been entered, that would have fully and finally resolved the claims and left nothing further for the bankruptcy court to do but execute the judgment. However, by its very nature, the parties' agreement is an attempt to obtain an "advisory decision" from this Court, which it is without authority to give.[19] The Estoppel Reconsideration Order lacks both sufficient finality and a separability determination, both of which are necessary to satisfy the prerequisites of a proper Rule 54(b) certification, and has not been appropriately appealed.

▮▮▮▮ After oral argument of these appeals, the parties jointly requested that this Court grant leave to appeal the Reconsideration Orders, in the event they do not satisfy Rule 54(b). This Court has discretion to treat timely filed notices of appeal as motions for leave to appeal interlocutory orders.[20] However, "[l]eave to hear appeals from interlocutory orders should be granted with discrimination and reserved for cases of exceptional circumstances."[21] Both of these appeals derive from rulings on what are essentially untimely post-judgment motions. The standard for review of such rulings is abuse of discretion. However, appellants do not argue that their motions were appropriate under Rule 60(b), nor that the bankruptcy court abused its discretion by denying them. Instead, they frame their issues as if the appeals were taken from the bankruptcy court's original orders, and assert that the standard of appellate review is *de novo*. Appellants' efforts to manipulate their claims into a form that facially satisfies the requirements for appellate review are insufficient to confer appellate jurisdiction. Moreover, under these circumstances, we decline to exercise the discretion to grant leave to appeal on an interlocutory basis.

## III. CONCLUSION

This Court is without appellate jurisdiction to consider these appeals and the appeals are therefore DISMISSED.[22]

---

**18.** *Agreement to Stay Proceedings and Conditional Agreement to Dismiss Claims, in* Appendix at 169–70.

**19.** *See McKinney v. Gannett Co., Inc.,* 694 F.2d 1240, 1247–48 (10th Cir.1982).

**20.** 28 U.S.C. § 158(a)(3); Fed. R. Bankr.P. 8003(c).

**21.** *In re Midgard Corp.,* 204 B.R. 764, 769 (10th Cir. BAP 1997).

**22.** Accordingly, the Joint Supplemental Brief Concerning Certification of Order Pursuant to Rule 54(b); or, in the Alternative, Motion for Leave to Appeal Interlocutory Orders, filed by the parties on November 8, 2007, is DENIED AS MOOT.