**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENET CIRCUIT**

STATE OF NEW MEXICO, ex rel. State
Engineer,

     Plaintiff - Appellee,

PUEBLO DE SAN ILDEFONSO;
PUEBLO DE NAMBÉ; PUEBLO DE
POJOAQUE; PUEBLO DE TESUQUE,

     Intervenors Plaintiffs - Appellees,

and

UNITED STATES OF AMERICA,

     Intervenor Plaintiff,

v.

ELISA M. TRUJILLO,

     Defendant - Appellant.

No. 15-2047

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No. 6:66-CV-06639-WJ-WPL)**

Lorenzo E. Atencio, Familia Legal Services, Espanola, New Mexico (Stephen M. Mares,
Stephen Mares Firm, Santa Fe, New Mexico, with him on the briefs), appearing for
Appellant.

Arianne Singer, Deputy General Counsel (Gregory C. Ridgley, General Counsel, and Edward Charles Bagley, Special Assistant Attorney General, with her on the briefs), New Mexico State Engineering Office, Legal Division, Santa Fe, New Mexico, appearing for Appellee.

Alice E. Walker, McElroy, Meyer, Walker & Condon, P.C., Boulder, Colorado (Scott B. McElroy, McElroy, Meyer, Walker & Condon, P.C., Boulder, Colorado; Peter C. Chestnut and Ann B. Rodgers, Chestnut Law Offices, P.A., Albuquerque, New Mexico; Maria O'Brien and Sarah M. Stevenson, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, New Mexico; and Majel Russell, Elk River Law Office, Billings, Montana, with her on the brief), appearing for Intervenors Appellees.

---

Before **HOLMES, MATHESON,** and **MORITZ,** Circuit Judges.

---

**MATHESON**, Circuit Judge.

---

This appeal arises out of a long-running general stream adjudication, a lawsuit that determines parties' rights to use a particular water source. The water source here is the Nambé-Pojoaque-Tesuque Basin ("Basin"), a stream system emanating from the Sangre de Cristo Mountains in Santa Fe County, New Mexico.

The State of New Mexico ("State") is currently engaged in individual adjudications with parties who hold permits to divert the Basin's underground water through the use of domestic water wells. In an individual adjudication, the State and the permit holder negotiate the latter's water rights and, if necessary, litigate any contested issues before a special master. An individual adjudication aims to determine the priority

date of the water rights, source of water, point of diversion, place of use, amount limitations, and any other restrictions on use.

Elisa Trujillo holds a domestic well permit that allows her to divert the Basin's underground water. During her individual adjudication, she and the State disputed her water rights. In 2010, the special master granted summary judgment in favor of the State. In 2015, the district court entered an order ("2015 order") that adjudicated Ms. Trujillo's water rights based on the special master's 2010 summary judgment order.

Ms. Trujillo identified only the 2015 order in her notice of appeal, which is an interlocutory order because the district court has not entered a final decision in the general stream adjudication. She presents no developed argument challenging the special master's summary judgment order that served as a basis for the 2015 order. Instead, she spends much of her brief challenging two orders denying her motions to quash a 1983 injunction that placed limits on the State's issuance of domestic well permits.

Exercising jurisdiction to review the 2015 order under 28 U.S.C. § 1292(a)(1), we affirm.

## I. **BACKGROUND**

### A. *History of the General Stream Adjudication*

This general stream adjudication began in 1966 when the State sued the United States, Pueblo de Nambé, Pueblo de Pojoaque, Pueblo de San Ildefonso, and Pueblo de Tesuque (collectively "Pueblos"), and approximately 1,000 individuals living in the

Basin.  The lawsuit, styled *New Mexico ex rel. State Engineer v. Aamodt*, seeks to

establish the water rights in the Basin by determining:

a. The water rights adjudged each party.
b. The source, priority, amount, purpose, periods, and place of use of each [water] right.
c. The specific tracts of land to which the water right for irrigation is appurtenant.
d. Such other matters as may be necessary to define a particular right and its priority.

N.M. Aplee. Suppl. App. at 9.

Since the beginning of the adjudication, approximately 3,000 individuals who

claim water rights in the Basin have been named as defendants.  Although it was initially

a defendant, "[t]he United States, on its own behalf and on behalf of the Pueblos,

intervened to remove any immunity problem and was aligned as plaintiff."  *New Mexico*

*ex rel. State Eng'r v. Aamodt*, 537 F.2d 1102, 1105 (10th Cir. 1976).  The Pueblos later

retained private counsel to represent them.  *Id.* at 1107.

In 1983, the district court entered an order enjoining the State from issuing

domestic well permits unless the permits limited the use of underground water to

household purposes only.  In 1985, Ms. Trujillo's predecessor-in-interest received a

domestic well permit.  The permit limited underground water use in accordance with the

1983 injunction (household purposes only and no irrigation) and allowed a maximum use

-4-

of 3.0 acre-feet per year ("AFY").[1]  The parties and the district court refer to the permits issued after the 1983 injunction as the post-1982 permits.

In 1994, the district court directed a special master to join all post-1982 permit holders as defendants and to determine their water rights based on the doctrine of beneficial use.  The New Mexico Constitution states, "The unappropriated water of every natural stream, perennial or torrential, within the state of New Mexico, is hereby declared to belong to the public and to be subject to appropriation for beneficial use, in accordance with the laws of the state.  Priority of appropriation shall give the better right."  N.M. Const. art. XVI, § 2.  It also provides that beneficial use is "the basis, the measure and the limit of the right to the use of water."  N.M. Const. art. XVI, § 3.  To obtain water rights in New Mexico, a party must appropriate water for beneficial use, which entails "the use of such water as may be necessary for some useful and beneficial purpose in connection with the land from which it is taken."  *State ex rel. Erickson v. McLean*, 308 P.2d 983, 988 (N.M. 1957).

In a separate 1994 order, the district court amended all post-1982 permits, which included Ms. Trujillo's permit, to limit water use to either 3.0 AFY or "the historic beneficial use, whichever is less."  Pueblo Suppl. App. at 79.

---

[1] An acre-foot is a unit of volume commonly used to measure an amount of water and denotes "the quantity of water required to cover an acre to a depth of one foot." *Arizona v. California*, 283 U.S. 423, 460 n.12 (1931).

In 2006, the district court entered an order requiring all post-1982 permit holders to show cause:

> 1. Why the [permit holder's] water rights under a post-1982 domestic well permit should not be adjudicated in the quantity of 0.5 acre feet per annum; and
>
> 2. Why the [permit holder's] water rights under a post-1982 well permit should not otherwise be adjudicated consistent with the terms of the domestic well permit.

N.M. Aplee. Suppl. App. at 10-11. In the motion seeking the foregoing order to show cause, the State proposed a limit of 0.5 AFY based on the typical use of domestic well water statewide, even though evidence of domestic well water usage by post-1982 permit holders reflected a lower average of 0.3 AFY.

## B. *Ms. Trujillo's Individual Adjudication*

The State served Ms. Trujillo with a copy of the show-cause order along with a proposed order adjudicating her post-1982 underground water rights. The proposed order restricted underground water use to indoor purposes, prohibited irrigation, and limited the amount to 0.5 AFY based on historic beneficial use.

Ms. Trujillo objected to the prohibition on outdoor use and the proposed limitation of 0.5 AFY. She eventually litigated against the State before the special master to determine her water rights.

The State moved for summary judgment, contending Ms. Trujillo had failed to prove the right to use the Basin's underground water for an amount and purpose other than those described in the proposed order. The State presented an affidavit from an

expert witness stating the average per-household indoor use from a domestic well was 0.4 AFY. Ms. Trujillo did not present evidence in response to the State's expert witness. Instead, she asserted her permit gave her the right to use underground water for irrigation and to use 3.0 AFY. She also argued the district court lacked subject-matter jurisdiction and that the limitations on her water rights deprived her of equal protection and due process.

In 2010, the special master granted summary judgment in favor of the State. He determined Ms. Trujillo had failed to cite controlling authority to support her constitutional arguments. Regarding the use restriction, the special master concluded Ms. Trujillo's permit prohibited use of the Basin's underground water for irrigation. He further found, as to the amount restriction, that Ms. Trujillo had failed to controvert the State's evidence that the average per-household domestic well water use for indoor purposes was 0.4 AFY.

Before the special master issued the summary judgment order, Ms. Trujillo filed a motion for relief from the 1983 injunction. After the special master issued the order, she filed the following motions during the next five years: (1) an objection to the 2010 summary judgment order, (2) a motion to quash the 1983 injunction, (3) a motion to reconsider the district court's overruling of the objection to the summary judgment order, and (4) a second motion to quash the 1983 injunction. The district court overruled the objection and denied each motion.

In 2015, the district court ended Ms. Trujillo's individual adjudication when it entered its order on January 12 adjudicating her domestic well water rights. The 2015 order defined Ms. Trujillo's water rights by imposing the identical conditions contained in the district court's proposed order, including the limit of 0.5 AFY and the prohibition on outdoor use. The order was based on the special master's summary judgment order and contained no separate legal analysis.

The order stated: "IT IS FURTHER ORDERED that the Defendant(s) are enjoined from any diversion or use of the waters of the Nambe-Pojoaque-Tesuque stream system except in accordance with the rights adjudicated in this order or any other order of the Court." Aplt. App. at 145.

Although the district court stated its 2015 order was a final judgment as between the State and Ms. Trujillo, it also stated the order was subject to objection during the *inter se* stage of the adjudication. During the *inter se* stage, water rights owners can object to other water rights owners' individual adjudication orders, leaving individual adjudication orders subject to revision. In addition, the general stream adjudication remains pending and involves thousands of individuals who claim water rights in the Basin. Under the Aamodt Litigation Settlement Act ("Settlement Act"), the district court must enter a final judgment by September 15, 2017. Pub. L. No. 111-291, § 623, 124 Stat. 3064, 3151 (2010).

C. *The Aamodt Litigation Settlement Act*

As part of the general stream adjudication, the Pueblos, the United States, the State, Santa Fe County, and the City of Santa Fe entered into a settlement agreement that Congress approved through the Settlement Act. *Id.* §§ 601-26, 124 Stat. at 3134-56. The Settlement Act aims to settle the Pueblos' water rights in the Basin, *id.* §§ 621-23, 124 Stat. at 3149-51, and apportions federal funds to pay for a regional water distribution system, *id.* § 611, 124 Stat. at 3137. In addition, the Settlement Act states the district court must enter "a final decree that sets forth the water rights for all parties to the Aamodt Case" no later than September 15, 2017. *Id.* § 623, 124 Stat. at 3151. If the district court fails to enter a final decree by that date, any unexpended federal funds will be returned to the federal government. *Id.*

### D. *Notice of Appeal*

Ms. Trujillo filed her notice of appeal on March 12, 2015. The notice stated Ms. Trujillo was appealing the "final judgment entered in this action on the 12th day of January, 2015. (Attached)." Doc. 10254759 at 117. She attached the 2015 order.

### E. *The Pueblos' Intervention on Appeal*

After Ms. Trujillo filed her opening brief, the Pueblos jointly moved to intervene in the appeal. Even though they did not participate in Ms. Trujillo's individual adjudication, the Pueblos contended they had a direct interest in responding to Ms. Trujillo's arguments in her opening appellate brief about the 1983 injunction and the Aamodt Litigation Settlement Act. We granted the Pueblos' motion and allowed them to participate in the appeal.

-9-

## II. **DISCUSSION**

Ms. Trujillo asserts we have jurisdiction to review the 2015 order and the orders denying the motions to quash the 1983 injunction. We conclude (1) we lack jurisdiction under 28 U.S.C. § 1291 because the 2015 order is not a final judgment, which means the orders denying the motions to quash are not reviewable because they do not merge into a final judgment and would otherwise be untimely appealed; (2) the 2015 order is not final under the pragmatic finality exception; (3) we have jurisdiction to review the 2015 order and the special master's summary judgment order under 28 U.S.C. § 1292(a)(1); and (4) the special master properly entered summary judgment, and we therefore affirm the district court's 2015 order.

### A. *Jurisdiction*

#### 1. **Section 1291**

##### a. *Legal Background*

In general, federal circuit courts have jurisdiction to review only "final decisions" of district courts. 28 U.S.C. § 1291. A final decision must dispose of all claims by all parties, except a decision may otherwise be considered final if it is properly certified as a final judgment under Federal Rule of Civil Procedure 54(b). *Stockman's Water Co. v. Vaca Partners*, 425 F.3d 1263, 1265 (10th Cir. 2005). In this general stream adjudication, claims and parties remain pending. We therefore lack jurisdiction under § 1291 unless the 2015 order was properly certified as a final judgment under Rule 54(b).

Rule 54(b) allows a district court to "direct entry of a final judgment as to one or

more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). This determination must appear in the district court's order certifying the matter for appeal. *Stockman's Water*, 425 F.3d at 1265. We have interpreted the "expressly determines" language of the rule to require district courts to make two explicit determinations in the certification order. *Id.* First, the district court must determine the judgment is final. Second, it must determine there is no just reason for delay of entry of its judgment. *Id.* In doing so, district courts should "clearly articulate their reasons and make careful statements based on the record supporting their determination of 'finality' and 'no just reason for delay' so that we can review a 54(b) order more intelligently and thus avoid jurisdictional remands." *Id.* (quotations omitted).

Factors for the district court to consider in making an express determination of finality and no just reason for delay include "whether the claims under review [are] separable from the others remaining to be adjudicated and whether the nature of the claims already determined [is] such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals." *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980); *see also Stockman's Water*, 425 F.3d at 1265.

In the absence of express determinations, we have declined to "look beyond the text of the district court's order to determine whether it can be said to have made the requisite determinations." *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1278 (10th Cir. 2013); *see also Okla. Tpk. Auth. v. Bruner*, 259 F.3d 1236, 1242 (10th Cir. 2001) (stating we

-11-

adhere to the formal requirement that district courts make express determinations). In other words, when district courts fail to make express determinations, we do not consider the parties' arguments about finality and no just reason for delay.

For Rule 54(b) certifications, we employ a two-tiered standard of review. We review de novo the district court's determination of finality as a question of law. We review the determination of no just reason for delay for abuse of discretion. *Okla. Tpk. Auth.*, 259 F.3d at 1242.

b. *Analysis*

Ms. Trujillo contends the 2015 order is a final judgment under Rule 54(b) and § 1291. We disagree because the district court's certification is inadequate. The 2015 order cursorily states: "There is no just reason to delay entry of this Domestic Well Order as a final judgment as between the Plaintiff State of New Mexico and the Defendant(s) regarding elements of the claims of the Defendant(s) adjudicated by this Domestic Well Order." Aplt. App. at 144.

Missing from the order is any clear articulation of finality or no just reason for delay. It simply restates the language of the rule in conclusory terms and therefore falls short of proper certification. In addition, the order states it is subject to objections from other water rights holders in the *inter se* phase of the litigation, which indicates the order is not a final judgment. Another indication the order is not final is the Settlement Act's requirement that the district court enter a final decree on September 15, 2017. Pub. L. No. 111-291, § 623, 124 Stat. at 3151.

-12-

Ms. Trujillo contends the order is final because the district court is unlikely to alter it.[2] But we do not entertain parties' arguments in the absence of a proper certification from the district court. *Schrock*, 727 F.3d at 1278-79. We thus conclude the face of the 2015 order is insufficient to certify the order as a final judgment.

We lack jurisdiction under § 1291 because the 2015 order is not a final judgment under Rule 54(b).[3]

2. **Pragmatic Finality**

a. *Legal Background*

The pragmatic finality doctrine—also referred to as the practical finality doctrine, the *Gillespie* doctrine, and the twilight zone doctrine—is an exception to the formal finality requirement of § 1291. The inquiry is whether "the danger of injustice by delaying appellate review outweighs the inconvenience and costs of piecemeal review." *United States v. Copar Pumice Co.*, 714 F.3d 1197, 1209 (10th Cir. 2013) (quotations

---

[2] The State and the Pueblos agree the 2015 order is a final judgment. But "parties by consent cannot confer on federal courts subject-matter jurisdiction." *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1956 (2015).

[3] Ms. Trujillo contends the interlocutory orders denying the motions to quash the 1983 injunction are reviewable because they merge with the 2015 order as a final judgment. First, Ms. Trujillo waived the argument because she raised it for the first time in her reply brief. *See Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000) ("This court does not ordinarily review issues raised for the first time in a reply brief."). Second, the orders cannot merge into the 2015 order because it is not a final judgment. Finally, the orders are not otherwise reviewable because they were not appealed within 60 days of being entered. *See* Fed. R. App. P. 4(a)(1)(B) ("The notice of appeal may be filed by any party within 60 days after entry of the judgment or order appealed from if one of the parties is . . . the United States . . . ."). We therefore lack jurisdiction to review the orders.

omitted).

We have been leery to apply the doctrine. *See In re Motor Fuel Temperature Sales Practices Litig.*, 641 F.3d 470, 486 (10th Cir. 2011) (stating "we have questioned [the doctrine's] continued viability for the last fifteen years"); *Stubblefield v. Windsor Capital Grp.*, 74 F.3d 990, 996 (10th Cir. 1996) (stating "it is unclear whether the *Gillespie* doctrine is still viable"); *Utah ex rel. Utah State Dep't of Health v. Kennecott Corp.*, 14 F.3d 1489, 1495 (10th Cir. 1994) ("The doctrine has lived a checkered life in both our court and the United States Supreme Court."). In *Copar Pumice*, we stated, "To the extent this doctrine is still recognized, it must be invoked only in truly unique instances, and not when the dispute can be adequately reviewed on appeal from a final judgment."[4]  714 F.3d at 1209 (quotations omitted).

b.  *Analysis*

Ms. Trujillo contends the 2015 order creates a danger of injustice by depriving her of the right to use 3.0 AFY and to use underground water to irrigate a lawn, trees, and a vegetable garden.  But she has failed to demonstrate an injustice that warrants immediate, piecemeal review before the entry of final judgment, which is scheduled to occur by

---

[4] The doctrine has been most often applied in the administrative agency context "because agencies may be barred from seeking district court (and thus circuit court) review of their own administrative decisions." *Rekstad v. First Bank Sys., Inc.*, 238 F.3d 1259, 1262 (10th Cir. 2001) (quotations omitted).  As a result, "if a district court remands an issue to an administrative agency and essentially instructs the agency to rule in favor of the plaintiff, the agency may well be foreclosed from again appealing the district court's determination at any later stage of the proceeding." *Id.* (quotations omitted).

September 2017.

Ms. Trujillo has submitted no evidence she beneficially uses 3.0 AFY. And her permit has prohibited outdoor use for 31 years in compliance with the 1983 injunction. Her wish to use underground water for outdoor purposes in contravention of her longstanding permit does not create immediate jurisdiction. This is especially so given the context of this general stream adjudication. The 2015 order is subject to objections during the *inter se* stage and therefore open to alteration.

Our precedent casts a wary eye on the pragmatic finality doctrine. If a "truly unique circumstance" exists to which the doctrine applies, this is not it.[5] *Copar Pumice*, 714 F.3d at 1209 (quotations omitted).

3. **Section 1292(a)(1)**

a. *Legal Background*

Under § 1292(a)(1), we have jurisdiction over appeals from "[i]nterlocutory orders of the district courts of the United States . . . granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court." Section 1292(a)(1) "creates an exception from the long-established policy against piecemeal appeals." *Gardner v. Westinghouse Broad. Co.*, 437 U.S. 478, 480 (1978). We define an injunction broadly as

---

[5] Similar to the § 1291 analysis above, we conclude the orders denying the motions to quash the 1983 injunction do not merge in the 2015 order because the 2015 order is not final under the pragmatic finality exception.

"an equitable decree compelling obedience under the threat of contempt." *Int'l Longshoremen's Ass'n, Local 1291 v. Phila. Marine Trade Ass'n*, 389 U.S. 64, 75 (1967); *see also Consumers Gas & Oil, Inc. v. Farmland Indus., Inc.*, 84 F.3d 367, 370 (10th Cir. 1996); 11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2955 (3d ed. 2013). Under Federal Rule of Civil Procedure 65(d)(1), "Every order granting an injunction . . . must (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required."

When a litigant has requested injunctive relief and a district court has entered an interlocutory order expressly granting or denying such relief, we exercise jurisdiction under § 1292(a)(1) to review the order. *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1185 (10th Cir. 1999); *Tri-State Generation & Transmission Ass'n v. Shoshone River Power, Inc.*, 874 F.2d 1346, 1351 (10th Cir. 1989). When a litigant has not requested injunctive relief but the court enters an order having the practical effect of granting or denying injunctive relief, we may still exercise jurisdiction under § 1292(a)(1), but only when certain conditions are met under *Carson v. American Brands, Inc.*, 450 U.S. 79 (1981).[6] *Hutchinson v. Pfeil*, 105 F.3d 566, 569-70 (10th Cir. 1997); *Tri-State*

---

[6] *Carson* requires an appellant seeking review of such an order to demonstrate (1) "an appeal will further the statutory purpose of permitting litigants to effectually challenge interlocutory orders of serious, perhaps irreparable, consequence," and (2) "the order can be effectually challenged only by immediate appeal." *Carson*, 450 U.S. at 84 (quotations and brackets omitted).

*Generation*, 874 F.2d at 1351.

When determining whether an order expressly grants a request for an injunction, we consider the substance rather than the form of the motion and order. *Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1222 (10th Cir. 2009) ("In determining whether a remedy constitutes an injunction, however, this court relies upon the substance of the underlying order, not simply its form."); *Pimentel & Sons Guitar Makers, Inc. v. Pimentel*, 477 F.3d 1151, 1153 (10th Cir. 2007) ("[I]n deciding whether a district court order 'granting' an injunction is appealable under § 1292(a)(1), we consider the substance rather than the form of the motion and caption of the order."); *Forest Guardians*, 174 F.3d at 1185 n.11 ("The labels of the plaintiff and the district court cannot be dispositive of whether an injunction has been requested or denied.").

b. *Analysis*

The 2015 order describes Ms. Trujillo's water rights and states, "IT IS FURTHER ORDERED that the Defendant(s) are enjoined from any diversion or use of the waters of the Nambe-Pojoaque-Tesuque stream system except in accordance with the rights adjudicated in this order or any other order of the Court." Aplt. App. at 145. The order expressly grants a request for an injunction.

First, it contains explicit injunctive language—it enjoins Ms. Trujillo from diverting water in an amount or purpose other than those described in the proposed order. Although the order does not refer to Rule 65, it complies with the rule by stating the

-17-

reasons for its issuance, detailing its specific terms, and describing the restrained acts.[7]

*See* Fed. R. Civ. P. 65(d)(1). The district court's not labeling the order as one granting an injunction is not dispositive. *See Forest Guardians*, 174 F.3d at 1185 n.11.

Second, the order results from the State's request for an injunction. During oral argument before this court, the State said the injunctive language in the 2015 order appears in "every subfile order entered in the adjudication." Oral Argument at 37:04-37:22. In response to a question regarding the source of the injunctive language, the State said, "It is the State's language . . . . It is boilerplate." *Id.* at 38:55-39:07. The State also said the original purpose of including the injunctive language in individual adjudication orders was to give the district court "injunctive ability to issue contempt orders." Oral Argument at 36:02-36:27. Although the State asserts it has yet to seek a

---

[7] The district court's order includes the clause "any other order of the Court," which appears to be the "boilerplate" language the State provided to the court in the proposed orders adjudicating individual water rights. Oral Argument at 38:55-39:07. Such limited general language does not deprive the 2015 order of the level of detail required by Rule 65(d)(1). First, the order clearly specifies the contours of Ms. Trujillo's right to use domestic well water and commands compliance. *Cf. Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1244 (10th Cir. 2001) (noting "[a] preliminary injunction is vague [and therefore not sufficiently specific under Rule 65(d)] only when the delineation of the proscribed activity lacks particularity or when containing only an abstract conclusion of law, not an operative command capable of enforcement" (quotations omitted)). Second, viewed overall, the order fulfills the "two important functions performed by [Rule 65]: (1) to prevent confusion on the part of those faced with injunctive orders and (2) to aid the appellate court in defining the bounds of the injunctive relief." *Consumers Gas & Oil, Inc. v. Farmland Indus.*, 84 F.3d 367, 371 (10th Cir. 1996). The reference to "any other order of the Court" does not confuse Ms. Trujillo's water right as to amount or particular use nor our understanding of the injunctive relief. Consequently, we conclude the 2015 order satisfies the reasonable-detail requirement of Rule 65(d)(1).

-18-

contempt order, Oral Argument at 38:20-38:55, the injunctive language remains in each order adjudicating individual water rights. A review of the district court docket shows the State has included the injunctive language in proposed orders adjudicating individual water rights. *New Mexico ex rel. State Eng'r v. Aamodt*, No. 6:66-cv-6639 (D. N.M. Apr. 20, 1966), ECF Nos. 7093-1 at 2, 7094-1 at 2, 7111-1 at 2, 7297-1 at 2, 7298-1 at 2, 7304-1 at 2, 7307-1 at 2, 7328-1 at 2, 7375-1 at 2, 7534-1 at 1, 7544-1 at 2, 7546-1 at 2, 7548-1 at 2, 7588-1 at 2.

In short, the State proposed the injunctive language, and that language became part of the 2015 order. We construe this as a specific request for an injunction that the district court granted. We therefore exercise jurisdiction over the 2015 order under § 1292(a)(1).

### B. *Merits*

We next turn to the validity of the 2015 order. Our jurisdiction is limited to review of the 2015 order and any matters "closely related to the grant . . . of the injunction." *Jackson by Jackson v. Fort Stanton Hosp. & Training Sch.*, 964 F.2d 980, 989 (10th Cir. 1992) (quotations omitted); *see also Colorado v. Idarado Mining Co.*, 916 F.2d 1486, 1491 (10th Cir.1990). The special master's summary judgment order was the predicate for the 2015 order in that it determined Ms. Trujillo's water rights based on New Mexico's beneficial use doctrine. We therefore review the special master's order to determine the validity of the 2015 order.

On appeal, Ms. Trujillo has failed to make any meaningful argument attacking the special master's order. An opening brief must identify "appellant's contentions and the

reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Fed. R. App. P. 28(a)(8)(A). Based on this rule, "we routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief." *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007). We also decline to craft arguments that the parties have not adequately developed. *Perry v. Woodward*, 199 F.3d 1126, 1141 n.13 (10th Cir. 1999).

Ms. Trujillo vaguely addresses the special master's summary judgment order in her statement of the case and merely cites the summary judgment standard in her argument section. She provides no developed argument for us to address. And we cannot craft her argument for her. Standing alone, Ms. Trujillo's inadequate briefing is sufficient to affirm the district court's 2015 order.

Even if we look past the inadequate briefing, the result remains the same. Before the special master, Ms. Trujillo presented no evidence of her beneficial use of water for indoor purposes. And she failed to controvert the State's evidence regarding historic per-household indoor use. Moreover, her argument that a permit alone creates water rights contradicts New Mexico law. *See, e.g.*, N.M. Const. art. XVI, § 3 ("Beneficial use shall be the basis, the measure and the limit of the right to the use of water."); *Hanson v. Turney*, 94 P.3d 1, 4-5 (N.M. Ct. App. 2004) (holding a water permit by itself is not a water right). Her 31-year-old water permit forecloses any contention that she is entitled to irrigate her land.

In sum, Ms. Trujillo has not presented an adequately developed argument

-20-

challenging the special master's summary judgment order.  And she failed to controvert the State's evidence at summary judgment.  We therefore find no error in the special master's summary judgment order or the district court's 2015 order.

## III. **CONCLUSION**

For the reasons stated, we affirm the district court's 2015 order.