FILED
United States Court of Appeals
Tenth Circuit

July 2, 2018

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

CONTINENTAL MATERIALS
CORPORATION,

     Plaintiff - Appellant,

v.

VALCO, INC.,

     Defendant - Appellee.

No. 17-1108
(D.C. No. 1:14-CV-02510-RPM)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **PHILLIPS**, and **MORITZ**, Circuit Judges.
_____

Continental Materials Corporation (Continental) and Valco, Inc. (Valco)

entered into a lease concerning sand and gravel excavation. Years later, Continental

ran into an unexpected problem: an unfavorable sand-to-gravel ratio on a large

portion of the leased property made mining there unprofitable. Continental sued

Valco, seeking rescission or reformation of the lease. Valco counterclaimed to

enforce the lease and recover unpaid royalties. Then Valco sought summary

judgment on all of Continental's claims. Ultimately, the district court granted

summary judgment against Continental on all but one of its claims. Later, after first

_____

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

refusing to do so, the district court certified its order as final under Federal Rule of Civil Procedure 54(b).

Then Continental appealed the district court's partial-summary-judgment rulings, arguing that the district court had erred by resolving disputed facts against it. Because Rule 54(b)'s requirements are unmet, we lack appellate jurisdiction to consider the merits. So we dismiss the appeal.

## BACKGROUND[1]

Continental is a Delaware corporation in the business of mining sand and gravel. Valco is a Colorado corporation that before entering this acquisition agreement and lease had operated a ready-mix concrete, mining, and aggregate business in Pueblo, Colorado.

In October 1996, Continental and Valco entered an acquisition agreement under which Continental bought Valco's business in Pueblo. The acquisition agreement incorporates a lease that granted Continental the right to mine sand and gravel on Valco's property for one hundred years. In exchange, Continental agreed to make royalty payments until it had "paid royalties . . . on the total agreed sand and gravel reserves on the Property (the 'Agreed Sand and Gravel Reserves') of fifty (50) million tons." Appellant's App. vol. 4 at 873 ¶ 6(a).

The leased property consists of multiple parcels grouped into two chunks: one bordering the Arkansas River on the west side of Pueblo (Pueblo-West) and another

---

[1] When reviewing a decision to grant summary judgment, we view facts in the light most favorable to the nonmoving party, Continental, and draw all reasonable inferences in its favor. *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013).

about ten miles downstream on the east side of Pueblo (Pueblo-East). Continental mined Pueblo-West profitably for years before it began mining Pueblo-East. When Continental started mining Pueblo-East, it encountered less favorable sand-to-gravel ratios. The deposits on Pueblo-East contained too much sand and not enough gravel. Continental continued mining Pueblo-East but, despite its efforts, was unable to mine profitably. In fall 2014, Continental stopped mining the leased property.

That fall, Continental sued Valco in the United States District Court for the District of Colorado. Continental alleged that its payment of royalties under the lease was premised on the existence of fifty million tons of sand and gravel reserves. But Continental further alleged that it had understood the term "reserves" to mean "resources that can be mined in an economically viable fashion." Appellant's App. vol. 2 at 337 ¶ 7. Continental further alleged that it had exhausted the reserves after extracting a total of eleven million tons of sand and gravel.

Continental asserted seven claims: (1) Valco's nondisclosure or concealment of information about the sand and gravel reserves before the parties signed the lease; (2) breach of contract related to Valco's failure to provide Continental with information about the sand and gravel reserves; (3) mistake of fact about the amount of sand and gravel reserves; (4) lack of meeting of the minds about the meaning of the lease term "Agreed Sand and Gravel Reserves," Appellant's App. vol. 2 at 345; (5) impracticability of performance or frustration of purpose because the leased property didn't have fifty million tons of economically minable sand and gravel reserves; (6) breach of contract related to Continental's overpayment of royalties

3

arising from its own miscalculation of the inflation factor; and (7) breach of contract related to Continental's prepayment of royalties in excess of the royalties due for the amount of sand and gravel it had mined. Continental sought, among other things, prospective rescission or reformation of the lease and a declaration that Continental was excused from further performance.

In January 2015, Continental stopped paying royalties. In October 2015, Valco counterclaimed, asserting breach of contract for nonpayment of royalties, and seeking a declaratory judgment to determine Valco's rights and Continental's obligations under the lease.

Next, Valco filed five separate motions collectively seeking summary judgment on all Continental's claims. The district court granted summary judgment for Valco on all but one of Continental's claims—its sixth claim concerning the overpayment of royalties caused by Continental's own miscalculations.

Continental moved to certify the district court's partial-summary-judgment order as a final judgment under Rule 54(b) of the Federal Rules of Civil Procedure. Valco opposed certification. The district court denied Continental's motion to certify, concluding that the claims dismissed in the partial-summary-judgment order weren't "distinct and separable" from either Continental's remaining claim or Valco's counterclaims. Appellant's App. vol. 10 at 2730. In particular, the district court concluded that the "terms of the Lease and Continental's royalty obligation [we]re central to all the asserted claims, defenses, and counterclaims." *Id.*

4

Valco moved for entry of judgment on its counterclaims, arguing that the district court's partial-summary-judgment order had effectively granted its counterclaims. The next day, the district court denied Valco's motion without any explanation.

At a pretrial conference concerning Continental's remaining claim and Valco's counterclaims, the district court suggested that the parties conditionally stipulate to "the outcome of the case if the rulings on summary judgment are correct" to allow for an immediate appeal of the partial-summary-judgment order. Appellant's App. vol. 11 at 2897. In line with this suggestion, Continental and Valco jointly moved for "the entry of a final judgment." Appellant's App. vol. 10 at 2750. And they agreed, subject to Continental's right to appeal the partial-summary-judgment order, that the lease is enforceable and governs Continental's royalty obligations.

At a later status conference, the district court retreated from its earlier suggestion, concluding that the parties' stipulation couldn't confer appellate jurisdiction to review the partial-summary-judgment order. And the court agreed instead to certify an appeal of the partial-summary-judgment order under Rule 54(b). So Valco withdrew its objection to certification. Later that day, the court certified its partial-summary-judgment order for appeal. The way now clear, Continental appealed the district court's order granting Valco partial summary judgment on six of Continental's seven claims.

After reviewing the certification, we questioned whether we had appellate jurisdiction to review the district court's partial-summary-judgment order. We

5

ordered the parties to address that question in their merits briefs and suggested they seek a more detailed certification order from the district court. The parties returned to the district court to ask for clarification of the certification order.

In response, the district court entered an order expanding on its reasoning for certification. The district court (reversing its earlier conclusion) concluded that the six claims dismissed in the partial-summary-judgment order were separate and distinct from Continental's remaining claim and Valco's counterclaims. The district court further explained that Continental's remaining sixth claim—a claim seeking reimbursement for overpaid royalties—was "completely separate" from the claims resolved in the partial-summary-judgment order because the resolved claims didn't interact "with the calculation of royalties actually paid." Appellant's App. vol. 10 at 2802–03. Though the district court recognized that Valco's counterclaims might be affected by the rulings made in the partial-summary-judgment order, it concluded that Valco's counterclaims were separable because they still would need to survive Continental's affirmative defense—partial failure of consideration—which wasn't addressed by the partial-summary-judgment order.

After the district court entered its order clarifying its reasoning for certification, this appeal proceeded.

## DISCUSSION

On appeal, Continental argues that the district court erred in dismissing six of its seven claims on summary judgment. Continental and Valco both contend that we have appellate jurisdiction under 28 U.S.C. § 1291 because the district court properly

6

certified its partial-summary-judgment order as final under Rule 54(b). But we have an independent duty to inquire about our own jurisdiction. *Okla. Tpk. Auth. v. Bruner*, 259 F.3d 1236, 1241 (10th Cir. 2001). Because we conclude that Rule 54(b)'s requirements are unmet, we don't reach the merits of Continental's arguments. Instead, we dismiss the appeal for lack of jurisdiction.

Courts of appeals have jurisdiction to review "all final decisions of the district courts." 28 U.S.C. § 1291. A "final decision is 'one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Gelboim v. Bank of Am. Corp.*, 135 S. Ct. 897, 902 (2015) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)). An order disposing of fewer than all pending claims is generally not final for purposes of § 1291. *New Mexico v. Trujillo*, 813 F.3d 1308, 1316 (10th Cir. 2016). But Rule 54(b) provides one exception: "When an action presents more than one claim for relief . . . the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b).

## I. Requirements for Certification under Rule 54(b)

To properly certify an order as final under Rule 54(b), the district court must make two express determinations in its certification order: first, that its judgment is final, and second, that no just reason exists to delay entry of its judgment. *Trujillo*, 813 F.3d at 1316. "In making these determinations, the district court should act as a 'dispatcher' weighing Rule 54(b)'s policy of preventing piecemeal appeals against the inequities that could result from delaying an appeal." *Stockman's Water Co., LLC*

7

*v. Vaca Partners, L.P.*, 425 F.3d 1263, 1265 (10th Cir. 2005) (quoting *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980)). District courts should be reluctant to certify orders under Rule 54(b) because "the purpose of this rule is a limited one: to provide a recourse for litigants when dismissal of less than all their claims will create undue hardships." *Okla. Tpk. Auth.*, 259 F.3d at 1242 (quoting *Gas–A–Car, Inc. v. Am. Petrofina, Inc.,* 484 F.2d 1102, 1105 (10th Cir. 1973)).

We use a two-tiered standard to review a district court's Rule 54(b) certification. *Trujillo*, 813 F.3d at 1317. First, we review de novo the district court's determination of the certified order's finality, a question of law. *Id.* Next, we review for an abuse of discretion the district court's determination that no just reason exists for delay. *Id.* We conclude that we lack appellate jurisdiction because the partial-summary-judgment order isn't final. So our inquiry ends at the first tier.

"To be final for purposes of Rule 54(b), an order must be 'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Jordan v. Pugh*, 425 F.3d 820, 826 (10th Cir. 2005) (quoting *Curtiss-Wright Corp.*, 446 U.S. at 7). "[A] judgment is not final for the purposes of Rule 54(b) unless the claims resolved are distinct and separable from the claims left unresolved." *Okla. Tpk. Auth.*, 259 F.3d at 1243. So the "controlling jurisdictional question" is whether Continental's claims dismissed in the partial-summary-judgment order are "distinct and separable" from its sole remaining claim still pending in the district court—and from Valco's counterclaims. *See Jordan*, 425

8

F.3d at 826 (quoting *Old Republic Ins. Co. v. Durango Air Serv.*, 283 F.3d 1222, 1225 (10th Cir. 2002)).

No bright-line rule establishes whether claims are separable such that certification is proper. *See id.* at 827. The inquiry focuses on practical concerns, "particularly the question whether a subsequent appeal of the claims before the district court will require the court of appeals to revisit the same issues decided in the first appeal." *Id.* "To determine whether separate appeals will be redundant, courts consider whether the allegedly separate claims turn on the same factual questions, whether they involve common legal issues, and whether separate recovery is possible." *Id.*

So to determine whether the district court's partial-summary-judgment order was final, we must examine the relationship between the dismissed claims and Continental's remaining claim and Valco's counterclaims.

## II. Application

In its partial-summary-judgment order, the district court dismissed Continental's first (nondisclosure), second (breach of contract related to withholding information about the reserves), third (mistake of fact), fourth (lack of meeting of the minds), fifth (impracticability of performance), and seventh (breach of contract related to prepayment of royalties) claims. The district court left unresolved, for the time being, Continental's sixth claim, related to overpayment of royalties arising from Continental's own miscalculations, and Valco's counterclaims.

9

Continental argues that because the dismissed claims are separate and distinct from the remaining claim and counterclaims, the district court properly certified its partial-summary-judgment order under Rule 54(b). Valco agrees. But we conclude that the dismissed claims are too intertwined with the remaining claim and counterclaims to qualify as separable and distinct. We first address the overlap between the dismissed claims and the remaining claim and counterclaims. Then we turn to whether certification of the district court's partial-summary-judgment order would result in piecemeal appeals. And finally we examine whether the district court independently determined, apart from the parties' joint position, that its order was final before certifying it under Rule 54(b).

**A. Overlap between the Resolved and the Unresolved Claims**

Because Continental's sixth claim arises from its own royalty miscalculations and is unrelated to its theories for reformation or rescission of the lease, Continental argues that this claim is distinct and separable from its six dismissed claims. We agree that unlike Continental's other claims, its sixth claim doesn't seek to rescind or reform the lease. Instead, that claim seeks the return of Continental's royalty overpayments caused by its miscalculating the inflation factor. But even though Continental's sixth claim doesn't challenge the enforceability of the lease, it is still related to Continental's other claims and Valco's counterclaims—they all stem from Continental's royalty obligations.

In addition, Continental's six dismissed claims are inextricably intertwined with Valco's counterclaims. Continental's six dismissed claims seek to rescind or

10

reform the lease and excuse Continental from further performance while Valco's counterclaims seek to enforce the lease and recover unpaid royalties. Despite this interconnectedness, Continental argues that Valco's counterclaims are separable and distinct from the resolved claims because the counterclaims are subject to an affirmative defense, partial failure of consideration, that is distinct from the resolved claims. But Continental's affirmative defense also overlaps with the dismissed claims. Continental's affirmative defense is connected to its third, fifth, and seventh claims because they all address how the amount of sand and gravel reserves affects Continental's royalty obligations. And Continental's first, second, and fourth claims are connected to its affirmative defense because those claims address the parties' understanding of the reserves when they executed the lease.

Continental's third, fifth, and seventh claims are strikingly similar to its affirmative defense of partial failure of consideration. Those claims seek to excuse or alter Continental's obligations under the lease based on the amount of economically minable sand and gravel reserves. Continental's third claim alleges that the parties believed that there were fifty million tons of economically minable sand and gravel reserves when they executed the lease. Because it turned out that the leased property lacked that amount, Continental alleges a mistake of fact, justifying rescission of the lease. In Continental's fifth claim, it alleges that performance under the lease is impracticable because the leased property doesn't have fifty million tons of economically mineable sand and gravel reserves. And Continental's seventh claim, breach of contract, alleges that "[t]he amount of Minimum Royalty payments was

11

based on the mutual agreement that there were 50 million tons of reserves. . . . Because there were and are not 50 million tons of reserves Valco has no right to retain these prepayments." Appellant's App. vol. 2 at 347 ¶¶ 61–62. Similarly, as an affirmative defense, Continental alleges that it "promised to pay Minimum Royalties in consideration for the promise that there would exist 50 million tons of Agreed Sand and Gravel Reserves that could be extracted and marketed." Appellant's App. vol. 10 at 2748. Because Continental could economically extract only a total of eleven million tons of sand and gravel, it argues that its royalty obligations should be reduced in proportion to the shortfall in the reserves.

Like Continental's affirmative defense, its first, second, and fourth claims also relate to its royalty obligations and the parties' understanding of the sand and gravel reserves. Continental's first and second claims allege that Valco failed to disclose information about the sand and gravel reserves, "which created a false impression that there were 50 million tons of reserves." Appellant's App. vol. 2 at 343 ¶ 32. And in its fourth claim, Continental alleges that there is no enforceable agreement because there was no meeting of the minds about the term "Agreed Sand and Gravel Reserves." *Id.* at 345–46 ¶ 49. Continental alleges that it understood "Agreed Sand and Gravel Reserves" to mean "economically min[e]able reserves" and Valco understood the term to mean a volumetric measurement of the resource. *Id.*

The questions of Continental's royalty obligations and the sand and gravel reserves are fundamental to the dismissed claims, Valco's counterclaims, and Continental's affirmative defense. Any later appeal of the remaining claim six and

12

Valco's counterclaims would likely require us to reexamine Continental's royalty obligations and how the sand and gravel reserves and the parties' understanding about the reserves impacted those obligations.

### B. Policy against Piecemeal Appeals

The district court also partially justified its certification based on the overlap between the dismissed and remaining claim and counterclaims. In its order clarifying its reasoning for certification, the district court explained that "it would be more efficient to resolve any issue with the Summary Judgment Order before proceeding to a trial of the counterclaims[,]" because the counterclaims' fate might be decided by whether the appeals court reversed the partial-summary-judgment rulings. Appellant's App. vol. 10 at 2803–04. Because the claims are so interrelated, the district court reasoned, it could apply our resolution of the issues on appeal to the unresolved claims still pending in the district court.

But a court applying Rule 54(b) must consider the policy against piecemeal appeals, which is intended to promote efficiency at the appellate-court level. *Jordan*, 425 F.3d at 829. And placing an additional burden on the appellate court to assist the district court with later rulings doesn't serve that policy. Appellate courts may decline to take jurisdiction even after the parties have briefed and argued their positions on appeal. And "in the long run it will be less wasteful and more efficient for district and appellate courts to adhere to the rule that only separate and distinct claims can be isolated for appeal under Rule 54(b)." *Id.* Interrelated claims should be litigated and appealed together. *Id.*

**C. The District Court's Role**

Finally, we note that the district court must independently determine that the order it's certifying is final. The parties' consent to certification doesn't relieve the district court of that duty. Here, the district court reversed its ruling on certification after Valco withdrew its objection. But we don't see where the district court explained what circumstances had changed—other than Valco's withdrawing its objection—to render its partial-summary-judgment order final. And the parties' agreement to certify doesn't permit the district court to treat as final an order that isn't final under 28 U.S.C. § 1291. *See In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1108 (10th Cir. 2001) ("Finality is judged by the standards applicable to determining jurisdiction under 28 U.S.C. § 1291. . . . 'The District Court *cannot,* in the exercise of its discretion, treat as "final" that which is not "final" within the meaning of . . . § 1291.'") (quoting *Wheeler Mach. Co. v. Mountain States Mineral Enters., Inc.*, 696 F.2d 787, 789 (10th Cir. 1983)).

## CONCLUSION

For the foregoing reasons, this appeal is dismissed for lack of jurisdiction.

Entered for the Court


Gregory A. Phillips
Circuit Judge

14